# Vankirk, Appellant, *v.* Patterson.

*Vendor and vendee—Time—Contract—Equity.*

When parties have deliberately by their agreements or covenants fixed a time for the performance of an act, a court of equity will be very cautious how it interferes in disregard of it, and thus in effect change the contract which the parties have made. It will not do this unless by reason of mistake or some other cause falling within the legitimate powers of a court of equity it shall see that justice demands the exercise of its jurisdiction irrespective of the lapse of such time. But if a party who insists upon exact time has himself been the cause of delay, a court of equity will, notwithstanding, decree specific performance.

Where an option for the sale of land contains a covenant on the part of the vendee to pay one third of the purchase money on or before a certain date, and the vendors covenant to present a deed and show a clear title, the vendors, if they fail to present a deed and show a clear title, cannot claim a rescission of the agreement because of the failure of the vendee to pay one third of the purchase money within the time specified.

Argued Oct. 21, 1901. Appeal, No. 97, Oct. T., 1901, by plaintiffs, from decree of C. P. Greene Co., No. 34, in equity, dismissing bill in equity in case of Edward P. Vankirk and Elizabeth Vankirk v. James G. Patterson. Before McCollum, C. J., Mitchell, Dean, Fell, Brown and Potter, JJ. Affirmed.

Bill in equity to remove cloud on title.

From the record it appeared that on July 6, 1899, plaintiffs, Edward P. Vankirk and Elizabeth Vankirk, his wife, entered into an agreement, under seal, with defendant, J. G. Patterson, to sell, and on acceptance of the option, to convey to defendant, his heirs or assigns, all of the coal of the Pittsburg or river vein in and under a tract of 201 acres of land in Morgan township, Greene county, Pennsylvania, duly described, for the sum of $20.00 per acre, the purchase money to be paid on the delivery of the deed as follows: One third in cash, and the balance in two equal annual payments, in one and two years, secured by first mortgage on the coal.

The vendors covenanted to convey "clear of all encumbrances whatsoever." The agreement also contains the following provision: "The true intent and meaning of this agree-

ment is to give second party an option or privilege of buying said described coal, coal rights and privileges, upon the terms stated, at any time within twenty-five (25) days only from the date hereof, unless second party shall, before the expiration of this option, pay first party one dollar per acre, then in that case this option shall be extended for a further period of six months from the expiration of the first period above stated, which amount shall be applied as a part of said consideration money if said coal is taken by second party or assigns within said second period."

" In case said party of the second part does not give notice in writing of the right to purchase said coal, coal rights and privileges within the time as stated, then this agreement shall become null and void except as above stated. In case notice in writing is given of the right to purchase said coal, coal rights and privileges as aforesaid, within the time limited, then first party hereby binds himself, his heirs, executors and administrators, to make, execute and deliver to second party, their heirs and nominees, a deed in fee simple of the same as hereinbefore provided." " This option is null and void unless the money ($\frac{1}{3}$) is paid at the end of the six months."

On July 26, 1899, the defendant paid plaintiffs $201 on account of the contract, and thereby extended the option for six months from August 1, 1899. On January 26, 1900, defendant served a written notice on plaintiffs that he elected to purchase, and directed plaintiff to make a deed in accordance therewith. At the time plaintiffs gave their option, defendant's agent, by parol agreed to have the survey and abstract of title made without cost to the plaintiffs, which was done about February 1, 1900, with the knowledge of plaintiff. An unrecorded deed in the chain of title was found, which plaintiffs were requested to record, but the request was not complied with. Liens were also found to exist in excess of the balance of the one third of the purchase money, due as a cash payment under the contract.

Plaintiffs did not, either before or after February 1, 1900, tender a deed or remove the liens, or offer to perform the contract. Defendant did not, prior to February 1, 1900, pay or offer to pay the one third of the purchase money, but on or about February 3, defendant's counsel notified one of the plaintiffs that defendant was prepared to carry out his part of

the contract; the plaintiff replied that he would not carry out the contract as made, but that defendant must deal with him on new terms. On March 6, 1900, after plaintiff had refused to make the conveyance to the defendant, the latter recorded the option, in order to protect his interests.

The court also found that plaintiffs knew that the defendant was having the land surveyed, and title abstracted; they received the $201 on the purchase money; they knew defendant was taking and paying for other coal in that vicinity, and they knew that the coal in suit was so situated as to join or connect defendant's other tracts of coal, so as to form a compact block, and that same was on that account of great value to the defendant, and necessary to the proper mining of his other coal; and the refusal of the plaintiffs to perform the covenants to be performed by them in said contract, and the filing of this bill, were for the purpose of compelling defendant to pay a higher price than agreed upon for their said coal.

The court further found that between the date of giving said option and February 1, 1900, coal lands in the vicinity of the coal covered by this contract had considerably advanced in price, largely owing to the defendant's purchases.

*Error assigned* was the decree of the court, dismissing the bill.

*James E. Sayers,* with him *H. J. Ross,* for appellants.—Upon an action of disaffirmance of a contract its basis is the default of one party with the absence of default by the other. To sustain it no more is required than readiness to perform. A tender of performance is not a condition precedent to the rescission of a contract by the party not in default. Since the party in default cannot demand performance by the other, he cannot demand a tender of performance: Eberz v. Heisler, 12 Pa. Superior Ct. 388.

It is true, as a general statement, that equity abhors a forfeiture, but this is when it works a loss that is contrary to equity, not when it works equity and protects the landowner against the indifference and laches of the lessee and prevents a great mischief: Brown v. Vandergrift, 80 Pa. 142; Tiernan et al. v. Roland, 15 Pa. 429.

Time may be made of the essence of the contract by parol: Reed v. Breeden, 61 Pa. 460.

Defendant cannot, after laches on his part, and a material change of circumstances affecting the rights, interest and obligations of the parties, move a chancellor to specific performance: Russell v. Baughman, 94 Pa. 400; Rennyson v. Rozell, 106 Pa. 407; Miller v. Henlan, 51 Pa. 265.

It would be a most unreasonable thing to ask a vendor to extinguish money liens on his land until it was ascertained that the vendee would complete his purchase. In the nature of things this is a step immediately preceding the consummation of the final treaty: Dalzell v. Crawford, 1 Parsons' Select Equity Cases, 37; Hampton v. Speckanegle, 9 S. & R. 212; Devling v. Little, 26 Pa. 502.

*A. F. Silveus*, with him *Willis F. McCook*, for appellee.—An option is a continuing offer to sell and when accepted becomes a complete contract: Napier v. Darlington, 70 Pa. 64.

To render time essential it must clearly appear that such was the intention of the parties; and it is not sufficient that a period is named, during which or previous to which something should be done: Waterman on Specific Performance, sec. 462; Decamp v. Feay, 5 S. & R. 323.

The fact that the contract contains the provision, " That this option is null and void unless the purchase money ($\frac{1}{8}$) is paid at the end of six months," is not conclusive against the defendant: Remington v. Irwin, 14 Pa. 143 ; Beach on Contracts, sec. 620, note 3 ; Bispham's Equity, sec. 391; Waterman on Specific Performance, sec. 471; Sylvester v. Born, 132 Pa. 475.

The agreement bound the parties to a simultaneous performance and neither could rescind without first performing or offering to perform: Hare on Contracts, 592; Adams v. Williams, 2 W. & S. 227.

A party in default has no right to insist upon rescission: Hatton v. Johnson, 83 Pa. 219; Irvin v. Bleakley, 67 Pa. 24; Tiernan v. Roland, 15 Pa. 429; Remington v. Irwin, 14 Pa. 143 ; Hare on Contracts, pp. 594, 600 ; Mervin v. McFadden, 2 Watts, 132 ; Love v. Jones, 4 Watts, 465 ; Eberz v. Heisler, 12 Pa. Superior Ct. 392.

Appellants are in default and have no right to rescind: Eberz v. Heisler, 12 Pa. Superior Ct. 394.

It is the duty of the vendor to remove all liens and record deeds: Frowert's Estate, 6 W. N. C. 239; Waterman on Specific Performance, sec. 471, pp. 657, 658; Beach on Contracts, sec. 898; Hare on Contracts, 598; Zents v. Legnard, 70 Pa. 194.

OPINION BY MR. JUSTICE POTTER, January 6, 1902:

This is an appeal from a decree dismissing a bill in equity, filed to cancel a recorded option for the sale of a tract of coal land; the recording of the option being a cloud on plaintiffs' title.

The lack of an orderly statement of the findings of fact, by the court below, has rendered it difficult to ascertain clearly, what the force and effect of the findings were. We are satisfied, however, that the first assignment of error presents substantially the entire ground of controversy between the parties. It alleges that the court erred in its answer to the plaintiffs' fourth request for a finding of fact, which request and answer is as follows:

"4. That this clause or covenant in the agreement of option, that the same should be null and void unless one third of the purchase money was paid at the end of six months, was inserted at the time and before the signing thereof, at the instance and request of the plaintiffs, and upon the express consent and agreement of the defendant in parol, that it was to be a condition precedent to the sale of said coal lands and their mining rights, that one third of the purchase money should be paid to the plaintiffs by the said defendant on or before February 1, 1900. *Answer:* Found as a fact, and further that the plaintiffs on their part were to make deeds free of lien and incumbrances."

Whether time was of the essence of the contract or not, the covenants of the vendor and vendee, were mutual. The defendant was bound to pay one third of the purchase money, and the plaintiffs were bound to present a deed and show a clear title.

The court found as facts, that there was a break in the chain of title, caused by an unrecorded deed, of which plaintiffs had notice. That no deed was presented by the plaintiffs, either upon the date stipulated or at any other time. And further

that the examination of the title by defendants, disclosed the existence of liens of record against the property in excess of the payment to be made on account of the purchase money. Clearly these were all matters in which plaintiffs were in default. Until remedied defendant could not be called upon to make payment, or to proceed in the performance of his covenants. The authorities are uniformly to the effect, that where performance is prevented by either party no advantage can be taken by the party causing the failure.

The law on the subject is thus stated in Waterman on Specific Performance, sec. 436 : " When parties have deliberately by their agreements or covenants fixed a time for the performance of an act, a court of equity, will be very cautious how it interferes in disregard of it, and thus in effect change the contract which the parties have made. It will not do this, unless by reason of mistake or some other cause falling within the legitimate powers of a court of equity, it shall see that justice demands the exercise of its jurisdiction irrespective of the lapse of such time. But if a party who insists upon exact time, has himself been the cause of delay, a court of equity will notwithstanding, decree specific performance. The vendor is not entitled to forfeit the contract as against the vendee, when he is himself in no condition to perform, even though, by the terms of the contract, he has the right to declare it forfeited and to retain what has already been paid, if the vendee makes default. But the party seeking relief from a forfeiture must show that circumstances which exclude the idea of wilful neglect or gross carelessness have prevented a strict compliance, or that it has been occasioned by the fault of the other party, or that a strict compliance has been waived."

In Pomeroy on Contracts, sec. 394, it is said : " Wherever time is made essential, either by the nature of the subject-matter and object of the agreement, or by express stipulation, or by a subsequent notice given by one of the parties to the other, the party in whose favor this quality exists—that is, the one who is entitled to insist upon a punctual performance by the other, or else that the agreement be ended—may waive his right and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly or by his conduct; and his conduct will operate as a waiver when it is con-

sistent only with a purpose on his part to regard the contract as still subsisting and not ended by the other party's default."

In support of the text, a line of English and American cases are cited, which fully sustain this principle.

Our Pennsylvania cases of Remington v. Irwin, 14 Pa. 143, Tiernan v. Roland, 15 Pa. 429, Irvin v. Bleakley, 67 Pa. 24, and Hatton v. Johnson, 83 Pa. 219, are all to the effect that a party in default has no right to insist upon a rescission.

No case has been cited by counsel, or revealed by diligent search in which a party in default has been allowed to declare a forfeiture. Benedict v. Lynch, 1 Johnson's Ch. 370, cited by appellant, makes an exception broad enough to sustain this statement. We agree with the conclusion of the court below as set forth in the affirmance of defendant's third request for findings of law. " That as plaintiffs never performed or offered to perform their part of said agreement, and never tendered a deed 'clear of all encumbrances whatsoever,' no default can be imputed to the defendant and the agreement cannot be cancelled." Since the argument of this case, our attention has been called to the Act of June 10, 1893, P. L. 415, entitled, "An act to provide for the quieting of titles to land," and the suggestion has been made that this act provided a complete statutory remedy for the plaintiffs. Whether it does or not, we do not here decide, as the question was not argued, nor was it considered by the court below. The bill was properly dismissed upon the merits.

The assignments of error are all overruled and the decree is affirmed.