## Bonner v. Brown.

*Vendor and vendee—Executory agreement to convey—Demand by vendor upon vendee for payment in full before completion of buildings by former—Rescission—Action to recover payments made by vendee.*

1. Where a vendor who has agreed to convey land and complete buildings to be erected thereon, while in flagrant default in completing the buildings, demands final settlement in full from the vendee, although under the agreement such settlement is not to be made until the buildings shall have been completed, the vendee may treat the demand as a rescission of the contract and maintain an action to recover the payments made, expenses incurred and damages for loss of profits he would have derived if the buildings had been completed and the properties conveyed as required by the terms of the agreement.

2. A tender by the vendor of the properties in an unfinished state, accompanied by an offer to furnish policies to insure completion, the vendee is not bound to accept when the contract calls for the buildings "fully finished and completed."

3. A tender before completion and demand for full payment, coupled with the continued failure by the vendor to complete, is evidence of an intent by him not to carry out the contract, but to abandon or repudiate it, and it is a renunciation of his obligation to finish the properties, which releases the vendee from performance.

4. Where there is no provision for forfeiture and the vendor persistently refuses to comply with the agreement and demands that the vendee continue his payments on account of purchase money, the former, upon rescission, must restore the latter to the *status quo.*

Motion to take off non-suit. C. P. No. 5, Phila. Co., Sept. Term, 1919, No. 1501.

*R. P. Shick,* for plaintiff; *R. R. Vale,* for defendant.

MARTIN, P. J., Oct. 2, 1924.—Defendant, a builder, had under construction a row of dwelling-houses.

On July 10, 1918, plaintiff agreed in writing to buy from defendant, who agreed to sell and convey to plaintiff, sixteen adjoining lots of ground with a two-story brick dwelling on each lot, to be fully finished and completed, situated on Annsbury Street, between 6th and 7th Streets, in the City of Philadelphia.

The price was $3775 for each property. First mortgages of $2200 were to remain on the fourteen inside properties, and $2500 on the corner properties. Plaintiff paid $300 when the agreement was signed, agreed to pay $200 or more each week as the work upon the buildings progressed, and the balance of the purchase price, *pro rata,* as settlements were made for the properties. Defendant agreed to fully finish and complete the buildings and premises within sixty days from the date of the agreement, to deliver to persons who purchased any of the properties from plaintiff a policy of the Franklin Trust Company for $1600 to insure the purchaser against loss by reason of non-completion of buildings or claims for street improvements, and against loss from mechanics' liens or municipal claims. He agreed to have the street upon which the properties fronted graded for paving within twenty days, to remove rubbish from and about the operation, and have all grading in front and back of the buildings and gables of the corners done within thirty days, and the sodding of front terraces and yards within sixty days; to furnish and complete at least three houses, including one corner property for plaintiff to use as a sample house, within fifteen days, so that plaintiff could show the sample house to prospective purchasers on or before Aug. 3, 1918; and agreed that all the houses would be completely finished, ready for occupancy, with all necessary inspections made and certificates granted at the time settlements were made.

There was a provision in the contract that permitted plaintiff to demand conveyance of any one or more properties at any time upon payment of the purchase price of the property conveyed; and it was agreed that full settlement for all the properties should be made within forty-five days after completion of the entire operation; and that the money paid by plaintiff when settlements were made for one or more properties should be used by defendant in the completion of the property selected by plaintiff next to be conveyed.

There was no stipulation in the agreement that time should be of the essence, and there was no provision for forfeiting any of the money paid on account in the event of failure by the vendee to perform the covenants by which he agreed to be bound.

On July 19, 1918, plaintiff paid $700, in addition to the $300 paid when the agreement was signed. He also made payments of $200 a week, and paid bills on account of the operation until the money he paid to defendant, or for defendant's account, amounted to $4574.

The buildings were not completed within the time stipulated in the agreement. About Sept. 13, 1918, after repeated complaints made to defendant by plaintiff, and promises of performance by defendant which were not fulfilled, plaintiff refused to continue the weekly payments of $200; but after he received an assurance from an officer of the Franklin Trust Company that work on the buildings would progress, he resumed the payments on Sept. 27th, and, with the consent of defendant, made them to the Franklin Trust Company until Nov. 25th.

In his efforts to sell the houses, plaintiff expended $381.59. He testified that he was ready to settle for the houses if the operation had been completed.

On Nov. 22nd he wrote to the officer of the Franklin Trust Company, specifying in detail the work required to complete the houses, and stated that "Unless some of this work is done very soon, I shall be compelled to ask for the return of my money and cancel the contract for breach on the part of Mr. Brown." A copy of this letter was sent by plaintiff to defendant on the day it was written, accompanied by a request that defendant see that it was given immediate attention and the work done in a satisfactory manner without delay.

Defendant, who was continually in default, on Dec. 31, 1918, wrote to plaintiff, asserting that on Dec. 26th a deed had been tendered to plaintiff and a demand made for payment of the balance of purchase money, and that plaintiff was then told that the policies of title and special insurance called for by the contract of sale would be delivered to him when demanded. In this letter defendant notified plaintiff, unless settlement was made in accordance with the agreement on or before Jan. 7, 1919, plaintiff would be considered in default, and such remedies for defendant's protection would be adopted as defendant might see fit. At the time this letter was written, the buildings were not completed according to the requirements of the agreement, nor were they completed on Jan. 7th, the date fixed in the letter when the defendant would consider plaintiff in default.

In view of defendant's flagrant default, plaintiff was justified in accepting this letter as a declaration by him of an intention to repudiate and abandon the contract, a refusal to perform his covenants, a rescission of the agreement, and an attempt to ensnare plaintiff into the position of the party failing to perform.

No more money was paid by plaintiff. On Jan. 4, 1919, he wrote to defendant, denying the allegations made in defendant's letter of Dec. 31st, and

asserted that the failure of defendant to perform the contract had been the source of all the difficulties, and that the unfinished condition of the properties was the best evidence of his entire failure to perform, and added, "In view, therefore, of the real facts of the case, I herewith formally notify you that I consider the contract between you and me at an end, and I make formal demand upon you to return to me all the moneys which I have advanced or expended in and about the properties under the contract of sale to me."

The present suit was instituted by plaintiff on Sept. 2, 1919. The properties had not been completed even then. In the statement of claim plaintiff demanded a return of the money he paid to defendant and on defendant's account, together with the expenses plaintiff incurred in efforts to sell the houses, and damages for loss of profits he would have derived if the buildings had been completed and the properties conveyed as required by the terms of the agreement.

There was evidence at the trial that strict compliance with the provisions in the contract stipulating the time for completion had been waived, but it was proved that plaintiff was constantly urging defendant to finish the properties, and when the protracted delay warranted the belief that defendant had no intention of completing the operation, plaintiff suspended the weekly payments until receiving assurance that the work would progress, and continued them until defendant impliedly rescinded the agreement. Plaintiff was not required then to tender the balance of the purchase money. All that was necessary was that he should be able, ready and willing to make settlement if defendant had been in a position to convey, but defendant was not able to convey the completed houses called for in his contract, and a tender of the balance of the purchase money and demand by plaintiff for a conveyance would have been a useless formality: Eberz v. Heisler, 12 Pa. Superior Ct. 388.

The tender to convey the properties in an unfinished state, which defendant made in December, accompanied by an offer to furnish policies to insure completion, plaintiff was not bound to accept. The contract called for a two-story brick dwelling on each lot, "fully finished and completed." Defendant had no right to demand a settlement at that time. By the terms of the agreement, "full settlement was to be made within forty-five days after completion of the entire operation."

It appeared in the testimony that defendant had asked plaintiff if he was ready to make settlement, and that plaintiff answered, "No," because defendant was not in any position to demand settlement, but that if defendant had lived up to the conditions of the contract, settlement would have been made, as plaintiff had been after him to complete the houses, but not one house had been done, not even the one for which plaintiff settled, and consequently he stated to defendant: "I am not going to make any settlement for those houses because you have not completed them."

Plaintiff was ready, able and willing to perform his part of the contract, while defendant at no time during the life of the agreement had been able to perform his part.

Under the conditions existing, plaintiff was entitled to regard defendant's effort to compel him to accept the unfinished properties as a rescission by defendant which justified the demand for a return of the money plaintiff had paid on the contract: Rugg v. Midland Realty Co., 261 Pa. 453.

Plaintiff testified that he was ready to settle for the houses by Nov. 25th, if they had been completed. They were not completed. Defendant retained

*Bonner v. Brown.*

the money received from plaintiff, rescinded the contract by implication and remained in possession of the properties.

In Standard Refrigerator Co. *v.* Apeldorn & Beatty Co., 77 Pa. Superior Ct. 563, it was held that one who is not in position to comply with the terms of his contract, and has done nothing toward its fulfillment, is not entitled upon its cancellation to retain a substantial payment which he received on account of the contract.

There was no provision in the agreement of sale for declaring a forfeiture, and no method provided by its terms to determine the extent of damage caused by a breach.

It was said by Mr. Justice Potter in Vankirk *v.* Patterson, 201 Pa. 90-96; "No case has been cited by counsel or revealed by diligent search in which a party in default has been allowed to declare a forfeiture."

The houses were not completed as late as September, 1919, and no tender was ever made to convey them in a finished condition. Tender before completion and demand for full payment, coupled with the continued failure of defendant to complete, was evidence of an intent by defendant not to carry out the contract, but to abandon or repudiate it; a renunciation of his obligation to finish the properties which released plaintiff from performance.

The principle applicable is stated in Sanders *v.* Brock, 230 Pa. 609-15-17, in the opinion by Mr. Justice Mestrezat: "It is true that a vendor cannot rescind a contract and at the same time directly or indirectly enforce it. If by his action he fails to keep its stipulations, a rescission as to him follows, and he is liable to the purchaser for the resultant injury. His breach of the agreement is as effective to prevent him from enforcing any right under it as the default of the purchaser is to deprive him of the benefits of its stipulations. . . . This action is based on an implied contract to refund the money. The implication must arise from equitable considerations. Such action can be maintained if the vendor rescinds the agreement. He has no right in equity to refuse to carry out his part of the contract and at the same time require performance by the other party, or retain what has been paid him under the terms of the contract. If he has received the purchase money, equity will compel him to refund if he declines to convey the premises."

If the defendant rescinded the agreement expressly or impliedly, he can derive no benefit directly or indirectly from it, and should place the plaintiff in *status quo* by returning the purchase money received from him.

Defendant failed to keep his stipulation. His breach of the agreement is as effective to prevent him from enforcing any right under it as the default of the purchaser would be to deprive him of the benefit of its stipulations.

Where there is no provision for forfeiture, and the vendor persistently refuses to comply with the agreement, and demands that the vendee continue his payments on account of purchase money, upon rescission he must restore the vendee in *status quo:* Howard *v.* Stillwagon, 232 Pa. 625.

It would be gross injustice to permit defendant to arbitrarily forfeit the money he and the trust company, as his agent, received, paid by plaintiff in reliance upon the performance by defendant of his covenants which he failed to perform.

When plaintiff's evidence closed, a non-suit was entered. Unless defendant can establish a legal or equitable right to retain the purchase money paid on account, he should not be permitted to derive a benefit from his default.

And now, to wit, Oct. 2, 1924, the motion to take off the non-suit is allowed.