Cohn *v.* Weiss et ux., Appellants.

Argued January 8, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Leon Shechtman,* with him *Hanley S. Rubinsohn* and *Rubinsohn, Lodge, Shechtman & Zahn,* for appellants.

*David Kanner,* with him *Samuel C. Nissenbaum,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 24, 1947:

Plaintiffs filed a bill in equity for specific performance of an agreement of sale of premises situated at 10-12 North Massachusetts Avenue, Atlantic City, New Jersey. Defendants in their answer averred that the vendee was in default for failing to make settlement at the time specified.

On September 4, 1945, plaintiffs entered into a written agreement, apparently in Pennsylvania, to purchase the premises referred to from the defendants, who are residents of Philadelphia, for the sum of $16,850.00, subject to a mortgage of $12,000.00. The sum of $500.00 was paid on account of the purchase price. The agreement provided, inter alia, as follows: "Settlement is to take place at Atlantic City, N. J., on or before the 25th day of November, 1945, which time is of the essence of this agreement, when the Seller shall deliver a general warranty deed for the said premises, and the balance of the purchase price is to be paid or secured as follows: . . ." The agreement of sale did not contain a waiver of formal tender of the general warranty deed. On November 24, 1945, by an agreement in writing, the time for settlement was extended to December 26, 1945, and the plaintiffs paid an additional sum of $500.00 on account of the purchase price.

On December 19, 1945, the plaintiff, Rebecca Fischell, notified the defendants that she had received a general warranty deed for execution, and certain affidavits to be executed by the defendants as required by the title company in order to remove objections raised by the existence of certain judgments against an individual who bore the same name as Max Weiss. Cohn testified that on December 19, 1945, he discussed the settlement with the defendant, Max Weiss, that he told Weiss that

he had the papers for him to execute; that he would mail them to him; that Weiss told him not to mail them. The next afternoon Weiss came in and told Cohn that he [Weiss] had a child who had been taken to the hospital, seriously ill. Cohn said: "With your child in the hospital, I will try to save trouble for your wife. You have her sign the deed here in front of a Jersey Commissioner. You will have to go to Atlantic City." Weiss took the papers away. Weiss said to Cohn: "Let me know in a couple of days [about closing the transaction] because with the boy in the hospital I would like to know in advance." He said: "Finally I got the Title Company and a date was arranged for the following Saturday, the 29th. I called Weiss immediately and said 'settlement is arranged for the 29th if it's all right with you, if it isn't we can change the date.'" Weiss said: "I'll call you tomorrow morning and let you know." Weiss did not call him so he called Weiss, who then said: "I think we are going to have a little trouble . . . I don't own that property, my mother owns it . . . We are not going to sell." Weiss testified that his child was in the hospital not on the 21st but on the 24th of December. He said he asked Cohn on December 21st if a date had been fixed for settlement. Cohn said he would let him know. He again called Cohn on December 22nd to find out when the settlement was to be held. Cohn said he would let him know. They had a similar conversation on December 23rd. He testified that on December 26th, about 4 P. M., he talked with Cohn and was told by him the settlement was going to be December 29th in Atlantic City. Weiss testified he told Cohn he would let him know in the morning. The next morning he said he told Cohn "I could not agree and I refused to go on with the settlement at that time." He was asked these questions on cross-examination: "Did you tell Mr. Cohn on the 21st that if a settlement was not made on the 26th you would consider the deposit forfeited." He answered: "I did not." "Did you

tell him that on the 24th?" He answered: "I did not." "Did you tell him that on the 25th?" "A. I did not. Q. Did you tell him that on the 26th when he called you at 4:00 o'clock? A. No." He was asked: "The first time you told him was on the 27th?" He answered: "That's right." The conduct of the defendant, Weiss, during the week ending on December 26, 1945 was sufficient to convince the plaintiff that he, Weiss, was not going to insist that the transaction be consummated on the date specified, to wit, December 26, 1945.

Even though the agreement of sale makes time of "the essence of the contract", this provision may be waived by agreement or by the conduct of the parties. This record supports the court's 13th finding of fact that "the defendants deliberately permitted the settlement day to pass without affirmative action in the expectation of avoiding the contract . . ." Weiss admitted that 2 days before the fixed date of settlement he mentioned to Cohn that his [Weiss'] son was in the hospital. The further statement (if Cohn's testimony is credited) that he was "not interested in real estate . . . his child's life came first" was well calculated to lull Cohn into the belief that Weiss was not going to insist on closing the deal on December 26th. Weiss admitted that on December 26th, Cohn said that settlement had been fixed for December 29 and he [Weiss] made no objection. If Weiss really considered that time was of the essence of the contract, he should, on December 26th, have said to Cohn: "You close this transaction today or I will consider the agreement at an end." Instead of thus acting with the frankness of a fair-dealing man, he said nothing until the following day when he refused to carry out the agreement of sale.

In *Vankirk v. Patterson*, 201 Pa. 90, 50 A. 966, this court cited with approval the following from Pomeroy on Contracts, section 394: "Wherever time is made essential either by the nature of the subject-matter and object of the agreement, or by express stipulation, or by a sub-

sequent notice given by one of the parties to the other, the party in whose favor this quality exists—that is, the one who is entitled to insist upon a punctual performance by the other or else that the agreement be ended—may waive his right and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly *or by his conduct;* and his conduct will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting, and not ended by the other party's default." (Italics supplied.) In *Secombe et al. v. Steele,* 61 U. S. 94, at 104, the Supreme Court of the United States said: "It must affirmatively appear that the parties regarded time or place as an essential element in their agreement, or a court of equity will not so regard it." The court cites *Parkin v. Thorald,* 16 Beav. 59, where the master of the rolls said: "But courts of equity make a distinction in all case sbetween that which is matter of substance and that which is matter of form; and if it find that, by insisting on form, the substance will be defeated, it holds it to be inequitable to allow a person to insist on such form, and thereby defeat the substance." In *Marshall v. Keach,* 227 Ill. 35, 81 N. E. 29, it was held that although time is expressly made of the essence of the contract, this stipulation may be waived by a failure to insist on performance within the time prescribed, and it cannot thereafter be asserted as a defense to a suit for specific performance.

In *Cheney v. Libby,* 134 U. S. 68, at page 78, it was held by the United States Supreme Court, in an opinion by Justice Harlan: "Even where time is made material, by express stipulation, the failure of one of the parties to perform a condition within the particular time limited, will not in every case defeat his right to specific performance, if the condition be subsequently performed, without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The discretion which

a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it, (Hennessy v. Woolworth, 128 U. S. 438, 442,) may, and of necessity must often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions. (Citing cases)." In *Kobrin et al. v. Drazin,* 128 A. 796, it was held by the Court of Chancery of New Jersey that time, made of the essence of the contract by stipulation or circumstances, may be waived by inconsistent conduct subsequent to the time fixed for performance.

In *Waller v. Lieberman,* 183 N. W. 235, the Supreme Court of Michigan held that although performance within the time specified in the contract may be of the essence of the contract it may be waived by written or oral agreement. It quotes the following from Justice COOLEY, in *Smith v. Lawrence,* 15 Mich. 499-500: "Specific performance of contracts must always rest in the sound discretion of the court; to be decreed or not as shall seem just and equitable under the peculiar circumstances of each case. It is frequently ordered in favor of a party who has been for a considerable period in default, if he has never abandoned the contract, and the other party has suffered nothing from the delay for which he cannot be compensated in the decree." "In *Hager v. Ray,* 176 N. W. 443, 446, the court said: '. . . specific performance of a contract for the purchase of real estate may not be arbitrarily refused, but in the exercise of a sound legal discretion should be granted, in the absence of some showing that to do so would be inequitable.' "

Volume 30 of Cyc., at page 1384, makes the following statement: "Whether time is or is not of the essence of the contract, if the vendor has waived strict compliance with its terms as regards time of payment, he cannot thereafter rescind or forfeit the contract, with-

out notifying the purchaser of his intention to do so unless payment is made, and allowing him a reasonable time for performance . . . After forfeiture for default has been waived, time becomes essential thereafter only where the vendor makes it so by proper notice and demand. The decisions proceed upon the theory that the vendor cannot use his own indulgence as a trap in which to catch the purchaser." (Citing cases). In the instant case the apparent "indulgence" of the defendant at Christmas-time 1945 and his leading Cohn to believe that his (Weiss') solicitude for his son who was ill in the hospital had crowded the pending real estate deal out of his mind was well calculated to serve "as a trap" to put the purchaser "off his guard" in respect to time being of the essence of the contract of sale and purchase. His failure on December 26th to object to the postponement of the settlement date also tended to mislead Cohn into the belief that Weiss did not regard time as of the essence of the contract.

Another important element in this case is the fact, as found by the court below, that the defendants never tendered a duly executed general warranty deed, nor the necessary affidavits as to existing judgments required to remove the objections of the title company. If the vendor intended to hold the vendee to a strict compliance to the terms of the agreement in respect to the time of settlement, he should have been meticulous about his own readiness to perform his part of the agreement at the time fixed for settlement. In *Lefferts v. Dolton*, 217 Pa. 299, 66 A. 527, this court held that before a vendee is called upon to pay his money, he is "entitled to see that the conveyance is properly signed, sealed and acknowledged, and that the description of the land to be conveyed is correct."

In the instant case the court below correctly said: "In the absence of an express waiver of formal tender, the vendors were under a duty to appear at the stipulated time and place for performance and produce a

duly executed instrument. Until this was done, the vendee could not be called upon to make payment or to proceed in the performance of her covenant . . . [citing Vankirk v. Patterson, 201 Pa. 90]. We are confronted, therefore, with a situation in which both parties permitted the time for performance to pass . . . Having allowed the stated time to go by, neither party could terminate the contract suddenly without giving the other an opportunity to perform: Dravo Cont'ing Co. v. Rees & Sons Co., 291 Pa. 387."

In *Irvin v. Bleakley*, 67 Pa. 24, which was an action of assumpsit for breach of contract for the purchase and sale of property, this court said: ". . . whichever of the parties first desired to enforce performance was bound to regard his part of the contract as a condition precedent, and perform or offer performance in order to enable him to proceed to enforce the contract." (Citing cases). This doctrine was reiterated by this court in *Heights Land Co. v. Swengel's Estate et al.*, 319 Pa. 298, 179 A. 431, where it said: "It is equally well established that a tender of performance on the part of plaintiff is prerequisite to a decree for the specific performance of a contract for the sale of real estate [citing cases]; he who seeks equity must do equity."

The court below in its discussion says: "Both parties apparently have overlooked the question of what law governs this action. The contract involved real estate located in New Jersey and was to have been performed in that state. In the absence of applicable pleadings and of pertinent evidence the lex forum is applied: Standard Pennsylvania Practice, Volume 3, page 35." The sentence just quoted is a correct statement of a legal principle, but in this case the location of the real estate involved is of no materiality. The defendant is properly before the court and must be submissive to its lawful decrees. When a court acts in personam, as the court does in the present instance, it is not restricted by geographical boundary lines. 30 C. J. S. 439, section

81 makes this statement: "The general rule is that, where a court of equity has jurisdiction of the person of defendant, it may render any appropriate decree acting directly on the person, even though the subject matter affected is outside the jurisdiction; a decree does not operate directly on a res which is beyond the territorial jurisdiction of the court, but the court may, acting in personam, coerce action respecting it." 30 C. J. S., section 82, p. 441 lays down this principle: "A court of equity . . . may compel action with respect to land which lies beyond its jurisdiction, as by conveyance thereof, provided it can enforce its decree by the exercise of its powers over the persons before it."

In *Massie v. Watts*, 6 Cranch 148, there was an appeal from the circuit court of the United States, for the district of Kentucky, in a suit in equity brought by Watts, a citizen of Virginia, against Massie, a citizen of Kentucky, to compel the latter to convey to the former 1,000 acres of land in the state of Ohio, the defendant having obtained the legal title with notice of the plaintiff's equitable title. A decree having been obtained against the defendant, the latter objected to the jurisdiction of the court. Chief Justice MARSHALL, speaking for the United States Supreme Court, said: ". . . the principles of equity give a court jurisdiction wherever the person may be found, and the circumstances, that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction." Chief Justice MARSHALL cites several cases, among them being the celebrated case of *Penn v. Lord Baltimore*, 1 Vez. 444, in which the Lord Chancellor of England decreed a specific performance of a contract respecting lands lying in North America. In Chief Justice MARSHALL'S opinion appears the following: "In the case of Arglasse v. Muschamp, 1 Vernon, 75, the defendant, residing in England, having fraudulently obtained a rent charge on lands lying in Ireland,

a bill was brought in England to set it aside. To an objection made to the jurisdiction of the court the chancellor replied, 'This is surely only a jest put upon the jurisdiction of this court by the common lawyers; for when you go about to bind the lands and grant a sequestration to execute a decree, then they readily tell you that the authority of this court is only to regulate a man's conscience, and ought not to affect the estate, but that this court must agree in personam only; and when, as in this case, you prosecute the person for a fraud, they tell you that you must not intermeddle here, because, the fraud, though committed here, concerns lands that lie in Ireland, which makes the jurisdiction local, and so wholly elude the jurisdiction of this court.' The chancellor, in that case, sustained his jurisdiction on principle, and on the authority of Archer and Preston, in which case a contract made respecting lands in Ireland, the title to which depends on the act of settlement, was enforced in England, although the defendant was a resident of Ireland, and had only made a casual visit to England. On a rehearing before Lord Keeper North this decree was affirmed." Chief Justice MARSHALL adds: "Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree."

In *Schmaltz v. York Mfg. Co.*, 204 Pa. 1, 13, this court said in an opinion by Justice MESTREZAT: "While the situs of the property in dispute is in another state and a decree of a court of this state cannot operate upon or directly affect it, yet we think that a court of equity in this state, having jurisdiction of all the parties, can determine their rights to the property, and by proper process enforce them in personam. (Citing cases). In the last cited case [Phelps v. McDonald, 99 U.S. 298]

it is said: 'Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the *lex loci rei sitœ*, which he could do voluntarily, to give effect to the decree against him. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree in personam according to those equities, and enforce obedience to their decrees by process in personam.'" See also *Commonwealth v. Froelich*, 56 Pa. Superior Ct. 604; *Kane & Elk Railroad Co. v. Pittsburgh & Western Railroad Co.*, 241 Pa. 608; *Given's Appeal*, 121 Pa. 260; *Vaughan v. Barclay*, 6 Wharton 392.

The decree is affirmed at appellants' cost.