## Flourtown Car Wash, Inc. v.
## Comet Carwash Corp.

*C. Howard Harry, Jr.,* for plaintiff.
*Bernard J. Smolens,* for defendant.

DITTER, J., June 26, 1970.—This equity case involves the exercise of an option to purchase a business.

In April 1967, plaintiff and defendant entered into a three-year lease for defendant's car-wash property. A rider to the lease gave plaintiff the option to purchase defendant's assets or to acquire all of defendant's common stock for $103,000. The rider also provided that plaintiff was to give written notice of its intention to exercise either of these options 90 days prior to the expiration of the lease, that is, on or before January 30, 1970.

In early January 1970, Jack Singer, President of the plaintiff-corporation, telephoned Adolph Lindquist, president of defendant, and informed him that he wanted to arrange a meeting to discuss which option plaintiff would exercise, i.e., whether plaintiff would acquire defendant's stock or its assets.

On January 25, 1970, Singer and Irving Potash, his accountant, met with Lindquist and his son, Robert, in Potash's office. Potash advised Singer against acquiring defendant's stock and suggested that a purchase of the assets at that time would have disadvantages for both plaintiff and defendant. From plaintiff's standpoint, it would establish a high valuation on the real property, which was located in Springfield Township, an area then about to be reassessed. From defendant's standpoint, Potash pointed out that a large capital gains tax would be involved. He suggested, therefore, a third alternative, an extension of the instruments, payments to be treated as rent for tax purposes, and a lower purchase price thereafter. Potash telephoned Walter Haun, Lindquist's accountant, and explained to him this proposal. The participants then agreed that Lindquist would confer with his accountant and have a further discussion with Singer and Potash.

On February 8, 1970, Lindquist informed Singer that plaintiff had failed to give written notice of its intention to exercise the option and that he was fearful about the effect this would have on his relationship with the preferred shareholders of Comet. A few days later, Lindquist told Singer that the method of purchase suggested by Potash was not acceptable because it provided little or no tax benefit to Lindquist.

By letter dated February 24, 1970, Lindquist advised Singer that since plaintiff had failed to give written notice as provided by the lease-rider, Lindquist intended to take possession of the premises on May 1, 1970. Various letters were thereafter exchanged and Lindquist, his son, and Singer met in the office of Singer's attorneys for a further discussion. The differences could not be resolved and the present suit was instituted to force defendant to convey the property in question to plaintiff.

Although the parties differ on some of the details of their conversations, there are no substantial issues of fact. They agree that plaintiff did not exercise the option in writing on or before January 30, 1970, as the lease-rider required. They agree that they met to discuss how the option was to be exercised before that date and that there were three alternatives considered. Lindquist relies almost exclusively on the technicality that he received no written notice from plaintiff. As a secondary matter, he asserts that plaintiff was unable to raise the necessary money for the exercise of the option. However, in this regard plaintiff's proof was overwhelmingly to the contrary. Singer showed that he and his partner had liquid assets of approximately $96,000 available and a mortgage commitment for $60,000. In addition, Potash testified that he had received a commitment from one of his clients to

lend $27,000 to Singer. The venture was one that Singer had turned into a profitable operation after Lindquist had lost money on it for almost the entire time that he ran it. In addition, Singer and his partner had invested more than $30,000 in the property during the three years that it was under lease.

Well known principles of contract law govern the issues in this case:

(1) Time is not of the essence in a contract unless there is a specific provision to that effect or unless the circumstances clearly indicate that it was the intent of the parties. Where time is not of the essence, the mere failure to perform on the date mentioned in a contract is not per se a breach which wholly destroys the contract: Bogojavlensky v. Logan, 181 Pa. Superior Ct. 312, 318-19 (1956). See also Carsek Corp. v. Stephen Schifter, Inc., 431 Pa. 550, 554-55 (1968).

(2) The parties to a written contract may modify its terms by their conduct, notwithstanding a provision that no subsequent alteration, amendment, change or addition will be binding unless reduced to writing and signed by them: Wagner v. Graziano Construction Co., 390 Pa. 445, 448 (1957).

(3) Parties to a written contract may abandon, modify or change it either by words or conduct: Barr v. Deiter, 190 Pa. Superior Ct. 454, 461 (1959); Consolidated Tile & Slate Co. v. Fox, 410 Pa. 336, 341 (1963).

(4) If a party to a contract has waived strict compliance with its terms, he cannot thereafter rescind or forfeit the contract without notifying the other party of his intention to do so and allowing a reasonable time for performance. Time becomes essential only when it is made so by proper notice and demand: Cohn v. Weiss, 356 Pa. 78, 83-4 (1947).

Clearly, time was not of the essence insofar as the

exercise of this option was concerned. There is no statement in the lease that it should be, and Lindquist's conduct on and after January 25th would have amounted to a waiver of such a term in any event. Lindquist went to the meeting that day knowing that plaintiff wanted the property. At the meeting, Lindquist agreed to consider the third alternative suggested by Potash. Between January 25th and January 30th, Lindquist did nothing and said nothing to put Singer on notice that strict compliance with the contract date was to be required. Even on February 8th, when Lindquist told Singer that notice had not been given in writing, Lindquist did not say that he was then insisting upon a definite decision within a stated time. Instead, he said he was concerned about the reaction that might come from the preferred shareholders, a fear which has proved to be groundless. A few days later, Lindquist rejected the proposal made by Potash on January 25th, not because of the failure to give written notice by January 30th, but because Lindquist felt the tax advantages to him would be minimal. Until his letter of February 24, 1970, Lindquist did nothing to indicate there should be a strict adherence to the contract terms, and by then, the time for written notice had already expired and he had effectively lulled Singer into believing no such notice was necessary. If, at that point, Lindquist wanted to make time a critical factor, he should have so advised Singer and should have extended a reasonable opportunity for exercising the option.

Lindquist stated that he and Singer had never dealt at arm's length with each other. In his testimony, Lindquist admitted he did not know of the importance of January 30th until Singer told him of it. Lindquist does not suggest that Singer's failure to send notice in writing caused any loss to Comet. Quite to the con-

trary, in his letter of February 24th, Lindquist points out ". . . I call your attention to the fact that Comet Car Wash Corporation has come into a windfall gain at the expiration of the option to buy."

The facts in Cohn v. Weiss, 356 Pa. 78 (1947), closely resemble those before us. In that case, the parties permitted a settlement date to go by and the seller's conduct indicated it was not to be considered important. The court pointed out that specific performance is frequently ordered in favor of a party who has been in default with respect to giving notice if the other party has suffered nothing from the delay. Here, defendant has not taken any steps which will bring prejudice to it as a result of an order to sell to plaintiff.

Because Cohn dealt with an agreement for the sale of real estate, defendant earnestly contends that it should be distinguished from a lease-option situation such as the one now before us. However, the principles set forth in Cohn and cited in this adjudication are basic tenets of all contract law. We see no reason to differentiate between real estate sale agreements and lease-options.

## DECREE NISI

And now, June 26, 1970, it is ordered, adjudged and decreed that defendant, Comet Carwash Corporation, proceed with settlement and with the conveyance to plaintiff, Flourtown Car Wash, Inc., of the premises located at 1100 Bethlehem Pike, Flourtown, Pa., and it is further ordered that settlement shall be made within 90 days from the date this decree becomes final.

The prothonotary, in accordance with the rule of equity procedure, shall give notice to counsel, and unless exceptions are filed within 20 days after notice of filing this adjudication, the decree nisi will become the final decree as of course.