# Keeney v. Dreibelbis

C.P. of Berks County, no. 01-8165.

*Kenneth C. Sandoe,* for plaintiffs.
*James W. Bentz,* for defendant.

LASH, *J.,* November 18, 2003—The issue before this court is whether plaintiffs, Elmer L. Keeney and Elesa M. Blauch (buyers), are entitled to specific performance of an agreement of sale entered into by the parties for the sale of a residence owned by defendant, Raymond C. Dreibelbis (seller). A non-jury trial was held on November 12, 2003. Based upon the evidence at trial, the court makes the following findings:

## I. FINDINGS OF FACT

(1) Plaintiffs, Elmer L. Keeney and Elesa M. Blauch are father and daughter and are adult individuals.

(2) Defendant, Raymond C. Dreibelbis is an adult individual who resides at 230 Spring Road, Bernville, Upper Tulpehocken Township, Berks County, Pennsylvania (property).

(3) At all times relevant hereto, seller was the owner of the property.

(4) In or about early April 2001, the parties agreed that buyers would purchase the property owned by seller.

(5) Buyers retained Kenneth C. Sandoe, Esquire, to handle the transaction on their behalf.

(6) Seller retained Blaine DeSantis, Esquire, to represent him for any matters pertaining to the settlement, including the scheduling.

(7) On behalf of buyers, Attorney Sandoe prepared a proposed agreement of sale. The proposed agreement was faxed to the office of Attorney Blaine DeSantis on May 22, 2001.

(8) The proposed agreement of sale set forth in paragraph three: "settlement shall be held on or before June 15, 2001." The notes/comments section of the facsimile transmittal also set forth: "Settlement is tentatively scheduled for June 15 at 9 a.m. in our office."

(9) On May 24, 2001, Attorney DeSantis responded by sending a facsimile transmission which included a proposed agreement of sale modifying the agreement of sale prepared by Attorney Sandoe.

(10) The agreement of sale modified and proposed by Attorney Blaine DeSantis included as a provision in paragraph seven: "Settlement shall be held on or before June 15, 2001. It is agreed that time for settlement and all other times referred to in this agreement are of the essence of this agreement, unless extended by mutual consent of all the parties hereto, in writing."

(11) The language of the modified agreement of sale was approved. Accordingly, on June 6, 2001, Attorney DeSantis sent an original and three copies of the agreement of sale, along with the seller's disclosure and original deed, all executed by seller, to Attorney Sandoe's office.

(12) At the time the seller signed the agreement of sale, it remained in the form in which it had been prepared by counsel for seller and had no interlineations or changes of any kind made upon it.

(13) Shortly after receiving the documentation, Cynthia Mann of Attorney Sandoe's office contacted Attorney DeSantis' office and spoke to Cheryl Zito regarding scheduling a time for settlement. This conversation would have taken place on June 7 or June 8, 2001.

(14) The substance of the conversation is in dispute. According to Cynthia Mann, both sides mutually agreed to extend the time of settlement to some time in July due to logistical difficulties. According to Cheryl Zito, Cynthia Mann requested a postponement to which Ms. Zito responded that she would have to check with Attorney DeSantis. Ms. Mann then advised Ms. Zito that seller had already agreed to the postponement. Ms. Zito accepted that representation at face value and agreed to have the agreement of sale modified.

(15) In any event, as a result of the conversation, Ms. Mann queried Ms. Zito on whether she should simply write in the new date on the agreement of sale and accompanying documents or have the documents sent back to Attorney DeSantis for modification. Ms. Zito agreed to have Ms. Mann simply modify the documents.

(16) As a result of the conversation, Ms. Mann changed the date on paragraph seven regarding the date for settlement from June 15, 2001 to July 16, 2001.

(17) The agreement of sale, with the notations, was signed by buyers on June 8, 2001.

(18) On June 8, 2001, Ms. Mann sent two signed copies of the agreement of sale, with the modification, to Attorney DeSantis. The transmittal correspondence also stated: "Also, settlement has again been changed. It is now scheduled for July 16 at 9 a.m. Please fax your fees to be included on the settlement sheet."

(19) At some point prior to the discussion between Ms. Mann and Ms. Zito, seller had approached buyers, advising them that the settlement may have to be postponed because the property had to be transferred from he and his wife into his name solely. Seller and his wife were in the process of obtaining a divorce and apparently, he and his wife had agreed that the property would be transferred into his name.

(20) At some point in time prior to June 15, 2001, buyer, Elesa M. Blauch, spoke with the seller and advised seller that settlement had been scheduled for a date in July of 2001.

(21) At no time prior to June 15, 2001, did seller make any objection to the settlement date extending beyond June 15, 2001.

(22) Attorney DeSantis became aware of the new scheduling date through Cheryl Zito. At no time prior to June 15, 2001, did he object to the settlement date being scheduled after June 15, 2001.

(23) On June 15, 2001, at approximately 2 or 3 p.m., seller contacted Attorney DeSantis to advise him that he had changed his mind and no longer wished to proceed with the transaction.

(24) The first time buyers learned of seller's change of heart was through correspondence sent to them from Attorney DeSantis dated June 18, 2001. That correspondence set forth: "Please be advised that I received a very distressed phone call on Friday afternoon, June 15, from Ray Dreibelbis. Apparently, he has been having second, third and fourth thoughts and doesn't want to sell his house. It has nothing to do with your client, nor does it have anything to do with the purchase price. It is just

that I think Ray never really thought the whole transaction through before saying 'Yes.' "

(25) Seller's decision to request that the agreement of sale be voided was, as stated in Attorney DeSantis' correspondence, simply a change of mind, and had nothing to do with the settlement date being scheduled for a time after June 15, 2001.

(26) Both parties had taken action in furtherance of the transfer of title. On June 9, 2001, seller held a public auction at which he sold tractors, farm equipment, and other items, contemplating the sale of the property. Also, seller permitted buyers to move some of buyers' property, including a freezer and clothing, onto the property.

(27) At all times, buyers maintained a sufficient amount of cash enabling them to transact the settlement immediately, and at all times were ready, willing, and able to purchase the property.

## II. DISCUSSION

Buyers are requesting that this court order seller to proceed with and consummate the transaction in accordance with the terms of the agreement of sale. The remedy sought is specific performance. The Supreme Court in *Payne v. Clark,* 409 Pa. 557, 561, 187 A.2d 769, 770-71 (1963), discusses this remedy within the context of a sale of real estate:

"From the moment an agreement of sale of real estate is executed and delivered it vests in the grantee what is known as an equitable title to the real estate. See Ladner on Conveyancing in Pennsylvania, §5:26 (3d ed. 1961). Thereupon the vendor is considered as a trustee of the real estate for the purchaser and the latter becomes a

trustee of the balance of the purchase money for the seller. *Kerr v. Day,* 14 Pa. 112 (1850). Hence, if the terms of the agreement are violated by the vendor, the vendee may go into a court of equity seeking to enforce the contract and to compel specific performance. *Borie v. Satterthwaite,* 180 Pa. 542, 37 A. 102 (1897); and *Agnew v. Southern Ave. Land Co.,* 204 Pa. 192, 53 A. 752 (1902). While the courts of equity have the power to grant specific performance, the exercise of the power is discretionary. In other words, such a decree is of grace and not of right. *Mrahunec v. Fausti,* 385 Pa. 64, 121 A.2d 878 (1956). It should only be granted where the facts clearly establish the plaintiff's right thereto; where no adequate remedy at law exists; and, where the chancellor believes that justice requires it. *Roth v. Hartl,* 365 Pa. 428, 75 A.2d 583 (1950), and *Mrahunec v. Fausti, supra.*"

The record is clear that the sole reason the transaction was aborted was because seller changed his mind. He does not claim, and he cannot rely on, remorse as a basis for aborting the transaction, either under the law or under the terms of the agreement. What he does claim is that buyers failed to consummate the transaction on or before June 15, 2001, thereby breaching the agreement, releasing seller from any further obligation. We must determine whether such a breach occurred under these facts.

On the one hand, we note that the agreement of sale, prior to modification, required settlement on or before June 15, 2001, and that time was of the essence of the agreement. The "time is of the essence" clause was not contained in the first draft of the agreement of sale prepared by buyers' attorney, but was included as part of

the modified draft prepared by seller's attorney. Thus, it appears that, at least at the time of negotiating the terms of the agreement of sale, seller's attorney considered the "time is of the essence" clause to be important.

On the other hand, buyers were at all times ready to proceed. They themselves never requested a postponement of the agreement. The postponement came about through the administration of the transaction by the attorneys' offices.

It is common practice for attorneys' offices to contact each other to schedule and reschedule settlement dates, attempting to coordinate the schedules of the clients, the attorneys, the title companies and other interested parties. These matters are handled routinely and rarely involve the client, except to check whether the client is available on a specified date. Given the short period of time between the execution of the agreement of sale on June 8, 2001, and the proposed last date for settlement of June 15, 2001, it was certainly not unforeseen that a postponement would be requested, and agreed upon in an informal manner.

This method of handling logistical issues regarding settlement sometimes includes extending a settlement beyond the date set forth in the agreement. Even when a time fixed in an agreement for settlement is stated to be of the essence of the agreement, the time may be extended by oral agreement or be waived by the conduct of the parties. *Davis v. Northridge Development Associates,* 424 Pa. Super. 283, 289, 622 A.2d 381, 385 (1993). The informality of the discussions, the fact that there was no formal, written agreement changing the date for settlement, or even that there was a miscommunication be-

tween the secretaries for the attorneys, would normally have no consequence because there was no prejudice. Seller did not claim, nor does there appear to be, any injury resulting from the one-month delay in consummating the transaction. The actions of the attorneys' offices became a focal point solely due to seller's independent determination that he no longer wished to proceed with the transaction.

Moreover, the conduct of seller and his counsel support the notion that the miscommunication between the secretaries leading to the rescheduling was inconsequential. Seller was made aware of the proposed change in date by buyer, Elesa M. Blauch, and did not object. Seller's counsel did not notify buyers' counsel or anyone of an objection either, even after receiving the June 8 correspondence setting forth the July 16, 2001 settlement date, which contained the executed agreements of sale with the written-in notation modifying the settlement date. We can draw the inference that, if seller was insistent on time being of the essence, he would have made this clear to his attorney, who would have then voiced an objection to the rescheduling. Finally, it was seller himself who first mentioned the possibility of extending the settlement date, in a conversation he had with plaintiff, Elesa M. Blauch. It was reasonable for buyers to believe that seller had no problem with extending the settlement date to July 16.

Most noteworthy is the timing of seller's decision to abort the transaction. He contacted his attorney on June 15, 2001, at 2 p.m. or 3 p.m. At that time, buyers were not in breach of the agreement and would not be in breach until 12:01 a.m., June 16, 2001, if at all. Buyers technically could have proceeded with the transaction but were

cut off from attempting to do so by seller's action. This timing was further compounded by the fact that no one contacted buyers about seller's decision until June 18, 2001, through correspondence from seller's counsel. As such, seller did not take any affirmative steps to consummate the transaction by June 15, 2001, as he was required to do, and did not provide buyers with a full opportunity to comply with their duties under the agreement.

The case cited by buyers, *Cohn v. Weiss,* 356 Pa. 78, 51 A.2d 740 (1947), is instructive. In *Cohn,* the parties entered into an agreement of sale which contained a provision setting forth that time is of the essence. Due to complications, the buyer informed the seller that settlement would take place on a date three days after the scheduled settlement date. Although the parties had several conversations, seller never advised buyer that he would insist on time being of the essence until the day after the scheduled settlement date. The court found that seller's conduct during the week leading up to the proposed time for settlement was sufficient to convince the buyer that the seller was not going to insist on the transaction being consummated on the proposed settlement date. The court goes on to say:

"In *Vankirk v. Patterson,* 201 Pa. 90, 50 A. 966, [967,] this court cited with approval the following from Pomeroy on Contracts, section 394: 'wherever time is made essential, either by the nature of the subject-matter and object of the agreement, or by express stipulation, or by a subsequent notice given by one of the parties to the other, the party in whose favor this quality exists— that is, the one who is entitled to insist upon a punctual performance by the other, or else that the agreement be

ended—may waive his right, and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly *or by his conduct;* and his conduct will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting, and not ended by the other party's default.' (italics supplied) In *Secombe et al. v. Steele,* [20 How. 94 at page 104,] 61 U.S. 94 at 104, [15 L.Ed. 833,] the Supreme Court of the United States said: 'It must affirmatively appear that the parties regarded time or place as an essential element in their agreement, or a court of equity will not so regard it.' The court cites *Parkin v. Thorald,* 16 Beav. 59, where the master of the rolls said: 'But courts of equity make a distinction in all cases between that which is matter of substance and that which is matter of form; and if it find that, by insisting on form, the substance will be defeated, it holds it to be inequitable to allow a person to insist on such form, and thereby defeat the substance.' In *Marshall v. Keach,* 227 Ill. 35, 81 N.E. 29, [118 Am.St.Rep. 247, 10 Ann.Cas. 164,] it was held that although time is expressly made of the essence of the contract, this stipulation may be waived by a failure to insist on performance within the time prescribed, and it cannot thereafter be asserted as a defense to a suit for specific performance.

"In *Cheney v. Libby,* 134 U.S. 68, at page 78, [10 S.Ct. 498, at page 502, 33 L.Ed. 818,] it was held by the United States Supreme Court, in an opinion by Justice Harlan: 'Even where time is made material, by express stipulation, the failure of one of the parties to perform a condition within the particular time limited will not in every case defeat his right to specific performance, if the condition be subsequently performed, without unreasonable

delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The discretion which a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it, (*Hennessy v. Woolworth,* 128 U.S. 438, 442[, 9 S.Ct. 109, 32 L.Ed. 500]) may, and of necessity must often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions. (citing cases)' In *Kobrin et al. v. Drazin,* [97 N.J.Eq. 400,] 128 A. 796, it was held by the Court of Chancery of New Jersey that time, made of the essence of the contract by stipulation or circumstances, may be waived by inconsistent conduct subsequent to the time fixed for performance. . . .

"If the vendor intended to hold the vendee to a strict compliance to the terms of the agreement in respect to the time of settlement, he should have been meticulous about his own readiness to perform his part of the agreement at the time fixed for settlement. In *Lefferts v. Dolton,* 217 Pa. 299, 66 A. 527, [117 Am.St.Rep. 913,] this court held that before a vendee is called upon to pay his money, he is 'entitled to see that the conveyance is properly signed, sealed, and acknowledged, and that the description of the land to be conveyed is correct.'

"In the instant case the court below correctly said: 'In the absence of an express waiver of formal tender, the vendors were under a duty to appear at the stipulated time and place for performance and produce a duly executed instrument. Until this was done, the vendee could not be called upon to make payment or to proceed in the performance of her covenant . . . [citing *Vankirk v.*

*Patterson,* 201 Pa. 90,] [50 A. 966]. We are confronted, therefore, with a situation in which both parties permitted the time for performance to pass . . . Having allowed the stated time to go by, neither party could terminate the contract suddenly without giving the other an opportunity to perform: *Dravo Contracting Co. v. James Rees & Sons Co.,* 291 Pa. 387[, 140 A. 148].' " *Cohn v. Weiss, supra* at 81-83, 84-85, 51 A.2d at 742, 743.

This case is similar to *Cohn.* The actions of seller establish that he never contemplated requiring buyers to settle on or by a certain date or time. It was only after he realized that he did not want to proceed with the transaction that he insisted on strict compliance with the "time is of the essence" provision. Buyers were always ready to proceed and should be entitled to the benefit of their bargain. This court shall compel specific performance.

We enter the following decree nisi:

## DECREE NISI

And now, November 18, 2003, judgment is hereby entered in favor of plaintiffs, Elmer L. Keeney and Elesa M. Blauch, and against defendant, Raymond C. Dreibelbis. Within 90 days defendant, Raymond C. Dreibelbis, shall by good and sufficient deed convey the premises situated at 320 Spring Road, Bernville, Berks County, Pennsylvania 19506, from defendant to plaintiffs in accordance with the terms of the agreement of sale entered into by the parties on June 8, 2001.