## DiGiuseppe v. DiGiuseppe, Appellant.

Argued April 13, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Joseph Alessandroni,* for appellant.

*Charles P. Mirarchi,* with him *Mirarchi & Mirarchi,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, May 25, 1953:

This is an appeal from a decree in equity which ordered defendant to specifically perform a written agreement for the sale of certain realty.

On April 21, 1951, plaintiff and defendant, who were at that time respectively wife and husband, entered into a written agreement to convey to plaintiff premises at 1410 South Juniper Street and 1917 South Mole Street, Philadelphia, which they owned as tenants by the entireties. The price agreed upon was $12,500, and the proceeds from the sale were to be divided equally between them. At the time the agreement was signed and thereafter, plaintiff paid to defendant deposits totaling $250 on account of the purchase price. The agreement provided that the sale was to be made to plaintiff ". . . free and clear from any right which . . . [defendant] might have in the real estate of his wife, by any law, statutory or common, . . .". The agreement further provided: "Settlement to be made on or before September 21st, 1951, and said time is hereby agreed to be the essence of this agreement.".

At about the same time the agreement was entered into, a proceeding for divorce was instituted, and sub-

sequently the divorce was granted on October 29, 1951. In the divorce action and in the real estate transaction the defendant-husband was represented by Angelo L. Scaricamazza, a member of the Philadelphia Bar. The chancellor found as a fact that the defendant left the real estate transaction entirely "up to him". On June 18, 1951, Charles P. Mirarchi, Jr., attorney for plaintiff in the purchase of the properties, notified defendant's attorney by letter that plaintiff was ready to consummate the sale at any time at the convenience of defendant and his attorney. Defendant's attorney was of the opinion that defendant could not convey clear title until after the divorce was granted and told plaintiff's attorney that when they [the defendant and his attorney] were ready, they would inform plaintiff's attorney. Subsequently plaintiff's attorney on several occasions told defendant's attorney that plaintiff was ready to make settlement. In September, 1951, defendant's attorney orally asked for an extension of time until some time in October, when he estimated that the divorce would be granted.

Plaintiff arranged for settlement to take place on October 31, 1951, two days after the divorce was granted. At the appointed time and place, plaintiff, her attorney, counsel for the mortgage company, and defendant's attorney appeared. Plaintiff deposited with the title company the balance due on the properties and completed the settlement in so far as she could. Defendant had been given notice of the settlement a week prior to October 31, 1951, but was not present and did not join in the execution of the deed for the premises. Both before and after October 31, 1951, Mr. Scaricamazza advised defendant to complete the settlement and to perform his part of the agreement. The chancellor specifically found as a fact that the reason for defendant's refusal to make settlement was to compel plain-

tiff to pay a higher price for the properties than had been previously agreed upon.

Defendant appeals from the final decree of the court below, which ordered defendant to join in the execution of a deed conveying the premises in question to the plaintiff.

The questions presented in this appeal are (1) where an agreement of sale for real estate provides for settlement on or before a specified date and further provides that time is to be the essence of the agreement, may the time for settlement be extended by an oral agreement or may such provision of the agreement of sale be waived by the conduct of the parties; and (2) if so, was the defendant's attorney authorized to make such oral extension agreement or was there such a waiver in this case.

The first question is answered by the decision of this Court in *Cohn v. Weiss et ux.*, 356 Pa. 78, 51 A. 2d 740, and the findings of fact by the chancellor in the instant case. In *Cohn v. Weiss*, supra, this Court said at p. 81: "Even though the agreement of sale makes time of 'the essence of the contract', this provision may be waived by agreement or by the conduct of the parties.". In that case it was held that it is not necessary that an agreement which extends the time for settlement be in writing, and that an extension agreement may be implied by the conduct of the parties. In his findings of fact the chancellor found that defendant's attorney had orally asked for an extension of time until some time in October after the divorce had been granted. This arrangement was agreeable to plaintiff's attorney. The extension of time for settlement having been agreed upon by the attorneys for the respective parties, the question then presented is whether defendant's attorney was authorized to make such an agreement.

The evidence in this case indicates that the conveyance of the properties here involved was part of a property settlement ancillary to the divorce proceeding which was instituted at about the same time as the agreement of sale was signed, and that the parties intended that the settlement should take place after the divorce decree was entered. Although the parties specified a definite date in their agreement for settlement, it is apparent from their conduct and all of the evidence that such provision of the agreement was waived by both of the parties. Appellant testified that he left the matter of the conveyance entirely up to his attorney. When he was asked in cross-examination whether he complained to his attorney when settlement did not take place on September 21, 1951, appellant answered: "No, I never did. Any time he would notify me, I was ready to make settlement.". This answer indicates that appellant had waived the "time is hereby agreed to be the essence" provision of the agreement of sale and also had authorized his attorney to extend the time for settlement. Although appellant testified that he knew nothing of the extension agreement entered into by his attorney, the chancellor found this testimony unworthy of belief.

Appellant cites *Starling, Exr. v. West Erie Avenue Building and Loan Association*, 333 Pa. 124, 3 A. 2d 387, in support of his contention that appellant's attorney was not authorized to orally agree to extend the time for settlement. In that case it was held that an attorney who was retained to conduct a foreclosure suit was not authorized to make his client personally liable for taxes due on the premises which the client would not have otherwise been obligated to pay. In that opinion many cases are cited as examples of the general proposition that the implied authority of an attorney does not extend to any acts which will result in the sur-

render of any substantial rights of the client or impose new liabilities upon him. *Starling v. West Erie,* supra, and the cases cited therein are inapplicable to the factual situation presented in the instant case. Here the attorney did not do any unauthorized act, but merely attempted to effectuate the intention of his client. Appellant's refusal to complete the settlement on October 31, 1951 was not predicated upon any loss or injury suffered as a result of the delay, but rather, as the chancellor found, an attempt to compel appellee to pay a higher price.

Decree affirmed. Costs to be paid by appellant.