224 F.2d 89
 Louis SHAPIRO, Trustee in the Consolidated Bankruptcy Proceedings of the Estate of Dorothy Hubbard and Grover D. Still, Individually, and the Partnership Known as Industrial Contracting Company, Composed of Said Dorothy Hubbard and Grover D. Still, and the Estate of Frank Edmund Hubbard, Individually, and as a Former Partner in the Partnership, Known as Industrial Contracting Company,
v.
ROYAL INDEMNITY COMPANY, a New York Corporation, Appellant.
 No. 11539.
 United States Court of Appeals Third Circuit.
 Argued May 19, 1955.
 Decided June 29, 1955.
 
 Tom P. Monteverde, Pittsburgh, Pa. (James J. Burns, Jr., on the brief), for appellant.
 Max U. Applebaum, Pittsburgh, Pa., for appellees.
 Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 The trustee in bankruptcy ("trustee") of Industrial Contracting Company and its constituent partners ("Industrial") brought suit to recover from Royal Indemnity Company ("Royal") $10,955.84 as a voidable transfer. The United States District Court for the Western District of Pennsylvania, 1954, 129 F. Supp. 54 held that the trustee had established a voidable transfer and entered judgment in his favor for $10,955.84.[1] From this judgment Royal has appealed.
 
 
 2
 The relevant facts as agreed upon by the parties and found by the District Court are as follows:
 
 
 3
 On May 14, 1949, and subsequently by amendment on June 29, 1949, Industrial contracted with Bechtel International Corporation ("Bechtel"), a Delaware corporation having its principal place of business in San Francisco, California, to sandblast and paint certain steel in the freight yard of the Reading Railroad at Lansdale, Pennsylvania. Clause 12 of this contract provided that Bechtel could withhold any payment until releases or waivers of all claims by anyone were furnished by Industrial. On or about May 18, 1949, Industrial as principal and Royal as surety, executed a bond in Bechtel's favor with respect to the contract. On August 30, 1949, Andrew J. Isacco, trading as Puritan Paint and Oil Company ("Puritan") who then had an unpaid claim against Industrial for paint used by the latter on the Bechtel contract, threatened to attach two carloads of Bechtel steel at Lansdale, Pennsylvania, unless arrangements were made for the payment of his claim.[2] In response to this threat Bechtel, on September 2, 1949, agreed in writing with Puritan to withhold payments from Industrial until the latter should pay or make satisfactory arrangements to pay Puritan. Bechtel also agreed not to release Royal under its bond unless the latter event should occur. On the same day Bechtel informed Industrial it would withhold payment until releases or waivers were furnished in accordance with the contract. No releases or waivers were supplied.[3] Bechtel then sought to pay $10,955.84, the sum it owed Industrial, to Royal for distribution to Industrial creditors. Royal declined to accept this arrangement because its liability to any Industrial creditor was conditioned upon a lien being asserted against the work involved in the Bechtel contract, which event had not yet occurred. After learning, however, that the Federal Government might file liens in California for unpaid taxes of Industrial, Royal agreed to accept Bechtel's proposal. On January 18, 1950, Industrial similarly consented.
 
 
 4
 The transfer was made on February 1, 1950. On February 2, 1950, a petition of involuntary bankruptcy was filed against Dorothy Hubbard and Grover D. Still, individually and the partnership known as Industrial, composed of said parties, and on February 24, 1950, they were adjudged to be bankrupt. On April 10, 1950, Frank E. Hubbard individually and as a former partner of Industrial filed a voluntary petition in bankruptcy and was forthwith adjudged a bankrupt.
 
 
 5
 On May 5, 1950, Royal, after being informed by the trustee of these bankruptcy proceedings and requested to retain the sum received from Bechtel, paid the entire amount to Puritan.[4] It is this sum, $10,955.84, which the trustee seeks to recover from Royal.
 
 
 6
 The necessary elements of a preference are enumerated in Section 60, sub. a, of the Bankruptcy Act.[5]
 
 
 7
 "A preference is a transfer * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."
 
 
 8
 It is agreed that the transfer from Bechtel to Royal was for the benefit of creditors, one of whom was the ultimate recipient, Puritan; that it was for or on account of antecedent debts of Industrial, suffered by Industrial while insolvent, and within four months of the filing of a petition in bankruptcy. There is no dispute that Puritan will receive a greater percentage of its debt than other creditors of the same class.
 
 
 9
 The only disputed point with respect to the issue of preference is whether the transfer of funds from Bechtel via Royal to Puritan was a transfer of the debtor's property within the meaning of Section 60, sub. a. To the extent that the transfer diminished or cancelled Industrial's claim against Bechtel there was undoubtedly a transfer of the debtor's (Industrial's) property. Industrial in consenting to Bechtel's agreement with Royal stated in its letter of January 18, 1950 that "we do hereby release you from any further claims or obligations in connection with the contract No. 419-J-113-1A upon payment to the said Royal Indemnity Company." It is clear, therefore, that whatever claim Industrial had was lost by the transfer. But it does not inevitably follow that the transaction constituted a transfer of Industrial's property, for it must first be determined to what extent Industrial had a claim against Bechtel. Clause 12 of Industrial's contract provided that Bechtel could "require Subcontractor to submit complete waivers and releases of any and all claims of any person, firm or corporation. Such release must be submitted covering all such claims as a condition precedent to final payment." As we have noted, Bechtel by letter dated September 2, 1949, notified Industrial that it would rely on Clause 12.
 
 
 10
 Royal's contention is that in the light of Clause 12 Bechtel owed nothing to Industrial when it transferred the $10,955.84 to Royal and that there was, therefore, no transfer of Industrial's property.
 
 
 11
 The District Court [129 F.Supp. 62], however, held that "* * * Bechtel, by its conduct in giving up its claimed right to withhold the money for nonperformance of the condition and paying it to Royal, with Industrial's consent, waived the performance of the condition * * *" relating to waiver or release.[6]
 
 
 12
 We agree with that conclusion. Bechtel's agreement with Royal provided that $10,955.84 be delivered to the latter for distribution to Industrial's creditors. As we have indicated, Industrial's consent to this arrangement was accompanied by its acknowledgment that Bechtel was thereby relieved from all obligations to Industrial under the contract. Industrial approved the arrangement because the contract funds retained by Bechtel were being utilized to satisfy Industrial's obligations to its creditors. If Bechtel had determined to rely on Clause 12 of the contract and withheld these funds, Industrial would not have been so benefited. Bechtel had no obligation to release these funds for the benefit of Industrial whether by direct payment or to the latter's creditors. By so doing Bechtel manifested a willingness not to rely on Clause 12.
 
 
 13
 Royal contends there has been no waiver of this Clause because Bechtel's motive in transferring the $10,955.84 was to relieve Bechtel of its apparent obligation to Puritan; that far from waiving its right to control these funds, Bechtel was disposing of them solely pursuant to its own interests. In this connection Royal contends that Bechtel was liable to Puritan because of a valid accord formed when Bechtel agreed with Puritan to withhold any unpaid balance from Industrial until the latter should pay Puritan or make arrangements for such payment, and Puritan relying on this agreement made no attempt to assert a lien on the Bechtel steel at Lansdale, Pennsylvania. Of course this accord, assuming its existence, did not obligate Bechtel to transfer the funds in issue to Royal for the benefit of Puritan or any other Industrial creditor. Bechtel's only possible obligation to Puritan was to withhold the funds from Industrial. To reinforce its contention therefore that Bechtel's only motive in making the transfer was to escape any form of liability to Puritan, Royal points out that it agreed to indemnify Bechtel for any loss resulting from the transfer, and the parties have agreed that Bechtel's prime motive in exacting this agreement of indemnity was to protect itself from "the pending claim of Puritan". Distilled to its essence, Royal's contention is that Bechtel was transferring funds to Puritan to relieve itself of the latter's harassment.
 
 
 14
 We are of the opinion, however, that by the transfer to Royal, Bechtel was merely electing a method by which to pay Industrial, whatever other goal was achieved by the transfer. This is made clear by the circumstance that Bechtel secured both Industrial's consent to the transfer and a release of all Bechtel's obligations under the contract.
 
 
 15
 Thus all the essential elements of a preference are established.
 
 
 16
 We agree also with the District Court's determination that the preference was voidable. Section 60, sub. b, of the Bankruptcy Act[7] provides:
 
 
 17
 "Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent."
 
 
 18
 It is agreed that Royal knew of Industrial's insolvency when it received the money from Bechtel, and the District Court has found that Puritan had reasonable cause to believe Industrial insolvent. This latter finding is not contested on this appeal.
 
 Section 60, sub. b, also provides:
 
 19
 "* * * the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property * * *." (Emphasis supplied.)
 
 
 20
 Royal made itself liable to the trustee under the provisions of this section since, after notice and demand by the trustee, it converted the $10,955.84 by paying it to Puritan.
 
 
 21
 For the reasons stated the judgment of the District Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The District Court held also that Royal was liable to the trustee as a fiduciary in possession of an asset of the bankrupt who had made payment to a favored creditor after actual notice of bankruptcy, relying on May v. Henderson, 1925, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870. Our view renders it unnecessary for us to pass on this aspect of the case
 
 
 [2]
 The parties have agreed that while Puritan had no right to make such an attachment, "Puritan, at that time acting through Isacco, believed at the time it threatened such an attachment that it could be enforced."
 
 
 [3]
 By at least September 22, 1949, Industrial had completed its work for Bechtel and but for Clause 12 would have been entitled to the unpaid balance of $10,955.84. Exhibit III
 
 
 [4]
 Industrial was indebted to Puritan in the amount of some $16,000. Royal settled the claim for $12,000
 
 
 [5]
 11 U.S.C.A. § 96, sub. a
 
 
 [6]
 See DiGiuseppe v. DiGiuseppe, 1953, 373 Pa. 556, 96 A.2d 874; 3 Williston, Contracts Sec. 678 (1936)
 
 
 [7]
 11 U.S.C.A. § 96, sub. b