Harry POLISH, Trustee in Bankruptcy of Edward F. Dougherty, t/a Penn Plumbing and Heating Co., Bankrupt,

v.

JOHNSON SERVICE COMPANY, Appellant.

No. 14521.

United States Court of Appeals Third Circuit.

Argued Jan. 10, 1964.

Decided June 11, 1964.

Raymond L. Shapiro, Philadelphia, Pa. (M. E. Maurer, Wexler, Mulder & Weisman, Philadelphia, Pa., on the brief), for appellant.

Paul Shalita, Philadelphia, Pa. (Sidney Chait, Adelman & Lavine, Philadelphia, Pa., on the brief), for appellee.

Before STALEY, HASTIE and SMITH, Circuit Judges.

STALEY, Circuit Judge.

The plaintiff, trustee in bankruptcy of a plumbing and heating contractor, filed suit in the district court to recover a sum of money which he alleged was property of the bankrupt which had been wrongfully collected by the defendant, Johnson Service Company, subcontractor of the bankrupt, from the Archdiocese of Philadelphia. The complaint averred that jurisdiction was predicated on § 70 of the Bankruptcy Act, 11 U.S.C. § 110 (1958 ed.). The district court held that the trustee is entitled to the sum on the grounds that the defendant had "received a void transfer prohibited by the

terms of the bankruptcy laws and the cases interpreting these bankruptcy laws." 218 F.Supp. 387, 391 (1963). From that determination the defendant took this appeal.

In December 1955, the Archdiocese of Philadelphia contracted with the bankrupt to furnish plumbing and heating work in a high school which the Archdiocese was about to construct. The bankrupt subcontracted the installation of a temperature regulation system to the defendant at a price of $6,000. On or about August 9, 1957, the bankrupt, then in a precarious financial condition, ceased work at the job site. By letter of the same date the defendant informed the Archdiocese that it had billed the bankrupt for $5,292 and had received payment of $1,638, leaving a balance of $3,654. It was pointed out that the amount to be billed for additional work which had not yet been completed was $708, making a total amount due of $4,362. The defendant further stated: "We wish to advise you as indicated upon our statement these items run back as far as June 1956 and our terms of payment are 30 days net. We also wish to advise you that under our company policy we cannot complete this job until payment is received or guarantee of payment made by your organization." Copies of this letter were sent to the bankrupt, the architect, and the surety for the bankrupt. Initially, the Archdiocese refused either to make or guarantee the requested payment in the absence of an assignment from the bankrupt. On August 21, the defendant notified the bankrupt and the other interested parties that it would not supply further labor and materials unless payment were received.

On August 30, 1957, the bankrupt filed a voluntary petition and was declared a bankrupt that day. In the meantime the Archdiocese had consulted several of its advisers who, after thorough investigation, informed it that the cost of completing the work initiated by the defendant would greatly exceed the total amount due on the subcontract. They therefore recommended that the Archdiocese agree to make the requested payment.[1] In these circumstances, an agreement was executed on October 10 in which the Archdiocese promised to pay the defendant $3,654 for the work which had already been performed as well as $708 for the work required to complete the installation. This payment was made from funds of the Archdiocese in November 1957, after the work had been completed. It is the payment of this money, which is alleged to be a "transfer" of property of the bankrupt, that the trustee challenges in this proceeding.

The trustee first filed with the referee in bankruptcy a petition for declaratory judgment against the Archdiocese in which it sought, inter alia, to charge the Archdiocese with that portion of the amount ($3,654) paid to the defendant for work done prior to bankruptcy. The trustee acknowledged the propriety of the payment ($708) for work done by the defendant after bankruptcy. The contract between the Archdiocese and the bankrupt expressly provided that if there were a default in performance, the Archdiocese could complete the work at the expense of the bankrupt. The referee held that the Archdiocese was allowed to set off as a counterclaim the entire amount it had paid to the defendant. No appeal was taken from that decision. The trustee then instituted this civil action in the district court against the defendant to recover the $3,654 paid to it by the Archdiocese.

The district court ruled that the defendant had never elected to terminate its contract with the bankrupt; that therefore the defendant's refusal to perform unless the Archdiocese paid the

---

1. As the district court noted, the substantial additional expense involved in having the work completed by another contractor was caused by the fact that the thermostats which had yet to be installed in the system were available only from the defendant, and the use of another type of thermostat would require major changes in the work which had already been done.

debt of the bankrupt constituted duress; and that, in these circumstances, the payment was a void transfer prohibited by the bankruptcy laws. The court further ruled that the trustee was entitled to recover under the principles of the Restatement of Restitution.

■■ At the oral argument of this appeal, the trustee conceded that his claim is based solely on the Bankruptcy Act, and that unless he has a claim under that Act, the Federal courts lack jurisdiction to grant the relief he seeks. Accordingly, we are not here concerned with the right of the trustee to recover on any theory which is outside the purview of the Bankruptcy Act. The sections of the Act relied upon to support the claim are § 70, sub. c and § 70, sub. e. The relevant portion of those sections are as follows:

"(c) * * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

"(e) (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor." 11 U.S.C. § 110, subs. c, e(1).

It is admitted that the "property" referred to in § 70, sub. c must be property of the bankrupt, and that this is true also of any property subjected to a transfer covered by § 70, sub. e. The defendant challenges the applicability of each of these sections on several grounds. We find it necessary to consider only the most fundamental of these arguments, i. e., that the money paid to the defendant by the Archdiocese was not property of the bankrupt, for we think that this contention is valid and requires that judgment be entered for the defendant.

The parties agree that the bankrupt had a contract claim against the Archdiocese for the value of the work which had been performed by the defendant prior to bankruptcy. It is also conceded that the trustee became vested with the title to this claim by § 70, sub. a(5) or (6) of the Bankruptcy Act. However, the trustee admits and, indeed, a final determination has already been made by the referee in bankruptcy, that the contract claim of the trustee was subject to the Archdiocese's right of setoff. The trustee has thus failed to demonstrate how a creditor of the bankrupt could have obtained a lien on this property at the date of bankruptcy.

More important, an analysis of the nature of the trustee's claim against the Archdiocese conclusively demonstrates that the payment to the defendant was not made from property of the bankrupt. Forty-one years ago Mr. Justice Brandeis made the following comment about the nature of a claim of a contract creditor against his debtor:

"* * * But an unsecured simple contract creditor has, in the absence of statute, no substantive right, legal or equitable, in or to the property of his debtor. This is true, whatever the nature of the property; and, although the debtor is a corporation and insolvent. The only substantive right of a simple contract creditor is to have his debt paid in due course. * * *" Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 497, 43 S.Ct. 454, 455, 67 L.Ed. 763 (1923).

Section 70, sub. a of the Bankruptcy Act does not purport to give the trustee in bankruptcy of a simple contract creditor

any rights in the property of his bankrupt's debtor, but simply vests the trustee with title to the claim against the debtor.

In a recent case not cited by either of the parties, the Supreme Court had occasion to comment upon the attempt of a trustee in bankruptcy to assert rights in a fund alleged to be property of the bankrupt. Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). The factual circumstances in that case are quite similar to those in the case at bar. The dispute was between the trustee in bankruptcy of a government contractor and the contractor's payment bond surety over which had the property interests in the fund withheld by the Government out of earnings due the contractor and turned over by the Government to the trustee. In holding that the surety, which had paid the laborers and materialmen of the defaulting contractor, was entitled to the fund, the Court stated:

" * * * Ownership of property rights before bankruptcy is one thing; priority of distribution in bankruptcy of property that has passed unencumbered into a bankrupt's estate is quite another. Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not a part of the bankrupt's property and do not vest in the trustee. The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors.

\* \* \* \* \* \*

"We therefore hold in accord with the established legal principles stated above *that the Government had a right to use the retained fund to pay laborers and materialmen; that the laborers and materialmen had a right to be paid out of the fund*; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it." (Emphasis supplied.) 371 U.S. at 135–136, 141, 83 S.Ct. at 234–237.

Certainly if the surety in that case had the property interest in the fund because of its payment to the laborers and materialmen, then *a fortiori*, the Archdiocese here had the property interest in the money which it "transferred" to the defendant in order to have the work completed. Thus it is clear that the money paid by the Archdiocese to the defendant was not property of the bankrupt.

The district court appears to have deemed significant the fact that the Archdiocese paid the defendant from "funds allocated for payment of school construction and renovation costs." 218 F.Supp. at 390, 391. But there is certainly nothing in this record to indicate that these funds were held in a segregated account by the Archdiocese as trustee for the benefit of the bankrupt. In the absence of this or a similar showing, we cannot perceive how the payment by the Archdiocese from funds owned by it can be considered a transfer of property owned by the bankrupt. As we have already seen in Pearlman, the fact that the fund in question was held for the specific purpose of paying the defaulting contractor and indeed, in that case, was turned over to the contractor's trustee in bankruptcy, does not increase the contractor's property interest in the fund.

The trustee cites our decision in Shapiro v. Royal Indemnity Co., 224 F.2d 89 (C.A.3, 1955), to support his position on this issue. We think that case inapposite for, as we repeatedly pointed out in that opinion, the bankrupt there not only consented to the transfer but executed a release of all its claims against its alleged debtor. Whatever property

rights the bankrupt had in the transferred sum were thus extinguished by this release. In the case at bar, neither the bankrupt nor its trustee consented to the payment made to the defendant. On the contrary, the trustee asserted a claim for this amount against the Archdiocese in adversary proceedings before the referee in bankruptcy.[2]

The judgment of the district court will be reversed and the cause remanded with directions to enter judgment for the defendant.

2. Because of this distinction we have no occasion to question the continuing vitality of Shapiro in the light of the decision of the Supreme Court in Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).