## Wolson and Wolson, Appellants, *v.* Freihofer.

*Real estate—Agreement of sale—Time—Essence of contract—Instalment payments—Waiver.*

In an action of assumpsit to recover money paid on account of purchase of real estate, the case is for the jury and a verdict for plaintiff will be sustained, where the evidence is sufficient to raise an issue of fact as to whether or not the seller had waived the right to declare a forfeiture, upon failure of payments in strict accordance with the terms of the contract.

One who is entitled to insist upon a punctual performance by the other, or else that the agreement may be cancelled, may waive his right and the benefit of any objection which he might raise to the performance after the prescribed time either expressly or by his conduct; and his conduct will operate as a waiver when it is consistent only with the purpose on his part to regard the contract as still subsisting and not ended by the other party's default.

A contract may be waived as effectually by implication as by express agreement, and whether there has been an implied waiver, in any case, depends upon whether the conduct of the party seeking to invoke the strict provisions of the contract, has been such as to lead the other party to believe that he would not be held by it, but might, notwithstanding it, proceed to perform.

Courts will relieve against forfeiture when the injured party has been misled or an undue advantage has been taken of his reliance on the waiver of strict performance.

Argued November 20, 1924.   Appeal, No. 267, Oct. T., 1924, by plaintiffs, from judgment of C. P. of Delaware

## 562 WOLSON & WOLSON, Appel., v. FREIHOFER.

Statement of Facts—Opinion of the Court. [84 Pa. Superior Ct. Co., June T., 1922, No. 1197, in favor of defendant non obstante veredicto in the case of Samuel Wolson and Rose Wolson v. William Freihofer. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit to recover money paid on account of purchase of real estate. Before BARNETT, P. J. 41st Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,203.53 and judgment thereon. Subsequently the court on motion entered judgment in favor of defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was the decree of the court.

*John E. McDonough,* for appellant.

*James L. Rankin,* of *Geary and Rankin,* and with him *Daniel W. Simkins,* for appellee.

OPINION BY HENDERSON, J., February 27, 1925:

The plaintiffs entered into a contract in writing, dated March 10, 1921, for the purchase of some lots in a tract of land owned by the defendant; in the development and sale of which he was engaged. The consideration to be paid was $3,100—$1,000 of which was to be paid at the signing of the article of agreement and the remainder on the tenth day of each succeeding month in sums of $40. Only half of the down money was paid in cash; a note for the balance, $500, having been given and accepted in place of the money. Concurrently with the execution of the contract of sale the defendant delivered to the plaintiffs a paper in the following form:

"Wm. Freihofer's Chester Park Development
        "B. J. Diggins, Manager.

"Offices:                               "Phone Chester 1223
"311 Crozer Building,
"25th and Edgmont Avenue.

                            "Chester, Pa., March 10, 1921.
"Mr. Samuel Wolson,
"425-427 W. 2d St.,
"Chester, Pa.

"Dear Sir:—

"In the event of sickness or unemployment, we will
grant an extension of time on monthly payments upon
written notice to this office setting forth reasons for ex-
tension.    It being understood that such extensions of
time are not to exceed ninety days at any one period.
    "William Freihofer's Chester Park Development.
                    "(Signed) B. J. Diggins,
                            "Manager."

The monthly payments of $40 were made up to Sep-
tember, and in that month a payment of $50 was made;
on December 13th, a payment of $25 was made; on April
3, 1922, a payment of $300 was made; and a payment of
$25 was made on May 16, 1922.    On June 30th following,
the defendant's agent notified the plaintiffs that their
account was many months in arrears and that unless the
entire balance due on the contract was paid within the
next ten days, the agreement would be cancelled.    This
notice was apparently given pursuant to the provisions
of the third paragraph of the contract wherein time was
stated to be of the essence of the agreement and that on
default in the payment of any monthly installment for
a period of thirty days after it became due, the balance
of the principal then remaining unpaid would imme-
diately become due and payable with the option to the
party of the first part to cancel the contract, in which
case all payments made thereon were to be retained by
the vendor as liquidated damages.    The defendant sold

the property to another purchaser on the 13th of July following the notice in June, 1922. The plaintiffs' action was brought to recover the sum of $1,140 paid on the contract. It is based on the allegation that the defendant waived the time provision in the contract and that there was an extension of the time of payment over the date when the forfeiture was asserted by the defendant and the lots sold to another purchaser. The verdict was in favor of the plaintiffs, but a rule for judgment non obstante veredicto was made absolute by the court; the basis of the judgment being that the evidence did not explain or excuse the failure of the plaintiffs to make payments between April 3, 1922 and the date when the forfeiture was claimed. Two positions are contended for on the appeal: One that the defendant waived the consideration of time under the express provisions of the collateral agreement of March 10th, and impliedly by his conduct in his dealing with the plaintiffs. Evidence was offered that late in the fall Wolson went to see the defendant's agent, Diggins, and told him he could not pay him then, but that he would have some money coming in from the "settlement" and he would pay him when he received that money. This seems to have been due from an organization called the "Linwood Association." The agent agreed that payment might be delayed until that settlement was had. The reason given for the extension was that the plaintiff was out of business. There was also evidence that in January, 1922, Wolson sustained a loss by fire which destroyed a grocery he was conducting at the time which loss Wolson reported to the defendant's agent, whereupon the latter agreed to an extension of time. When the payment of $300 was made, the money was given as alleged by Wolson to apply on the back payments on the contract, but Diggins, instead of giving that credit, applied the payment on the note, saying: "It will keep my books straight." When this payment was made the agent extended the note for four months. In May, 1922, the defendant's agent agreed that

the monthly payments would be reduced to $25 a month and that thereafter payments at that rate should be made until the balance of the purchase money was paid, at which time Wolson had a conversation with Diggins for further extension. No time for this extension was fixed —dependence perhaps being placed on the limitation in the supplemental agreement. In the latter part of June, 1922, Wolson went to the defendant's office and told his agent that he had a customer who wanted to buy the lots. This was pursuant to a conversation had in the fall before in which he spoke to the defendant's agent about selling the lots for him, when the latter said that he couldn't sell them in the fall, but that he would sell them for him in the spring. At the conversation in June, an argument arose between them in the course of which the agent said to Wolson: "I can cancel you out now;" two days after which the notice of cancellation was received. Wolson went to the agent in July to make a payment, but the latter refused to receive it stating that the lots had been sold to another party. The evidence presents the inquiry whether a forfeiture could be enforced according to the strict letter of the contract after the course of business between Wolson and the defendant's manager? It is a well established doctrine that forfeitures are not favored either at law or equity and that a forfeiture for a mere delay in the payment of money is least favored: Westmoreland Natural Gas Co. v. DeWitt, 130 Pa. 235. There are of course situations where the condition of the property or the use to which it is to be put makes the consideration of time important and where delay produces loss to the party to whom the obligation is made, but in the ordinary transaction of the sale of a building lot of the character of those bought by the plaintiffs there is no apparent reason why exact performance would be important after the payment of one-third of the purchase money. The delayed payments involved a small amount and the testimony disclosed an effort on the part of the purchasers to meet their obligation which

they did not succeed in wholly doing, in part at least, as might be inferred from the evidence, because of the fire loss occurring early in 1922. It will be observed that while time was made of the essence of the contract, there was an immediate departure from that provision by the agreement for an extension in case of financial or physical disability to the purchasers. The uncontradicted evidence shows that extensions were given presumably in compliance with the defendant's promise with respect thereto, and it is clear that payments were accepted in May which would have met the obligation of the contract if the money so paid had not been applied on the note. Wolson testified that he paid the money to be applied on the contract, but that the defendant's manager said he would credit it on the note as it would keep his books straight. The payor made no objection to that, but evidently did not understand the bearing of the credit on the forfeiture clause of the contract. Moreover at the time of these payments, the note was extended to a period beyond the 30th of June from which we think it may fairly be inferred that the defendant intended to give that period at least for performance of the contract by the plaintiffs. If an extension was given in May without a limit as to time, it is a reasonable presumption that it was to operate at least for the period fixed in the written agreement for extensions. The rule on the subject is thus stated in Pomeroy on Contracts, sec. 394: "Wherever time is made essential, either by the nature of the subject-matter and object of the agreement, or by express stipulation, or by a subsequent notice given by one of the parties to the other, the party in whose favor this quality exists, that is, the one who is entitled to insist upon a punctual performance by the other, or else that the agreement be ended, may waive his right and the benefit of any objection which he might raise to a performance after the prescribed time, either expressly or by his conduct; and his conduct will operate as a waiver when it is consistent only with a pur-

pose on his part to regard the contract as still subsisting and not ended by the other party's default." The principal thus expressed was approved in Van Kirk v. Patterson, 201 Pa. 90. The rule is well founded that courts will relieve against forfeiture when the injured party has been misled or an undue advantage has been taken of his reliance on a waiver of strict performance. The contract may be waived as effectually by implication as by express agreement, and whether there has been an implied waiver in any case depends upon whether the conduct of the party seeking to invoke the strict provision of the contract had been such as to lead the other party to believe he would not be held to it, but might, notwithstanding it, proceed to perform: Welsh v. Dick, 236 Pa. 155. A jury would have little difficulty in reaching the conclusion on the uncontradicted evidence that the defendant's manager had led the plaintiffs to believe that strict enforcement would not be resorted to. They had an agreement in writing for extensions; the testimony showed that a condition existed to which the agreement applied, and that there was an extension of time. There was also a course of conduct which might well lead the plaintiffs to the understanding that delay would not work a forfeiture. Moreover, if Wolson understood that his payment in May, 1922, was to have the effect of a payment on his contract, it does not appear that a default existed at that time. If the other view is to be taken that he had notice that the credit was applied on the note, he at the same time learned that the note was extended for four months, and might well believe that he had at least until the maturity of that obligation to perform his undertaking. That the right to insist on time as the essence of a contract may be waived not only expressly, but also by necessary implication is shown by abundant authority: Craig et al. v. Cosgrove, 277 Pa. 580; Welsh v. Dick, supra. There is no suggestion in the case that the defendant's situation was prejudiced by delay and the circumstance of the declination of the

manager to assist the plaintiffs in disposing of the lots as he had promised to do and the prompt resale may have thrown light on the facts as disclosed at the trial. Emphasis is placed by the appellee on the necessity of full performance tendered by the plaintiffs before their action could be maintained; the position being that if they decided to rescind the contract and insist on the return of the money paid thereon, it was absolutely necessary that they make a tender of full performance on their part, and as this was not done, they have not a right of recovery. But this argument is without weight for the reason that the defendant put it out of his power to convey the property by the subsequent sale of it to another purchaser. The law does not require vain things, and nothing could have been more futile than to have tendered the balance of the purchase money after the defendant had ceased to be the owner of the land. One of the plaintiffs did offer to make a payment on the contract, but this was refused for the sufficient reason that the title had passed from the defendant. The contract bound the latter to convey the property to the plaintiffs upon payment of the price. No attempt was made by him to enforce the contract; no tender of a deed was made, and the subsequent sale was clearly a rescission of the agreement with the plaintiffs. They were under no obligation therefore to go through the form of a tender of the purchase money. Having in view the evidence in the case and the law applicable thereto, we are of the opinion that the question whether there was a waiver of the time provision in the contract, expressly or by the course of business between the parties, was one to be answered by the jury and that the court was in error in entering judgment for the defendant.

The judgment is reversed and the record remitted to the court below with direction that judgment may be entered for the plaintiffs on the verdict.