## Redevelopment Authority of the City of Philadelphia v. Calesnick

*David S. Winston,* for plaintiff.

*Milton A. Calesnick* and *Eleanor J. Calesnick,* p. p., for defendants.

RIBNER, J., February 28, 1973.—The following issue was raised in this equity action: Is the Redevelopment Authority of the City of Philadelphia entitled to a reconveyance of the premises in question because of an alleged failure by defendant to meet deadlines set for the rehabilitation of said premises under agreements executed by the parties. To answer, we must determine whether or not defendant is correct

in his contention that the original dates set for completion were waived by plaintiff.

## FINDINGS OF FACT

1. Plaintiff is a public body and a body corporate and politic duly created and organized pursuant to and in accordance with the provisions of the Urban Redevelopment Law of May 24, 1945, P. L. 991, 35 PS §1701, et seq., and laws supplemental thereto.

2. Defendants are individuals, husband and wife, residing at 604 Manayunk Road, Merion Station, Pa.

3. The Urban Renewal Plan dated November 28, 1958, forms a part of a redevelopment proposal for Washington Square, Redevelopment Area, Washington Square East, Urban Renewal Area, Unit No. 1, which includes, inter alia, the premises located at 130-132 Delancey Street, Philadelphia. Pa.

4. The said redevelopment proposal mentioned in paragraph 3, supra, was approved by City Council of Philadelphia on April 13, 1959.

5. Prior to the transactions described below, plaintiffs had acquired fee simple title to the premises located at 130-32 Delancey Street.

6. Defendants, Milton A. Calesnick and Eleanor J. Calesnick, executed an assignment agreement with S. Lester Asher and Jeanette K. Asher dated January 13, 1965, and recorded in Assignment Book C. A. D. 372, at page 274, on January 26, 1965, by which they agreed to assume and perform all the terms, conditions and requirements contained in an agreement between plaintiff and the said S. Lester Asher and Jeanette K. Asher, dated April 25, 1962, and recorded in Deed Book C. A. D. 1910, at page 267, on June 5, 1962. In essence, the agreements called for the rehabilitation of the premises located at 130 Delancey Street.

7. Among the terms and conditions contained in

the aforesaid agreement assumed by defendants by their execution of the assignment agreement referred to in paragraph 6, supra, was paragraph 6, which by its terms, would have required defendants to complete rehabilitation of the premises located at 130 Delancey Street by January 8, 1966. Said paragraph reads as follows:

"6. The REDEVELOPER agrees that work required under this Agreement shall commence within one month after conveyance of title back to REDEVELOPER from AUTHORITY and that said work shall be completed within one year from date of commencement. The REDEVELOPER shall not be deemed in default on account of any failure in performance due to unforseeable causes beyond control of and without the fault or negligence of said REDEVELOPER, including but not restricted to acts of God, or of the public enemy, fires, floods, epidemics, quarantine restrictions, strikes, riots, civil commotion, freight embargoes, shortages of materials, or acts of the Federal Government or any of its agencies, or delays of subcontractors due to any such causes."

8. As of January 8, 1966, up to and including the time of trial, rehabilitation of said premises remained ". . . a long way from completion."

9. Defendants, Milton A. Calesnick and Eleanor J. Calesnick, executed another agreement with the Redevelopment Authority of the City of Philadelphia, dated November 15, 1966, and recorded in Assignment Book C. A. D. 913 at page 458, on February 16, 1967, by which they agreed in essence to purchase and rehabilitate the premises located at 132 Delancey Street as an eighteenth century garden adjacent to 130 Delancey Street and perform all the other terms, conditions and requirements stated in the agreement.

10. Among the terms of the agreement referred to

in paragraph 9, supra, was paragraph 7, which by its terms required defendants to complete restoration of the lot by February 17, 1969. Said paragraph 7 reads as follows:

"7. The work to be performed by the REDEVELOPER under this Agreement shall be commenced within three (3) months after conveyance of title to the land in the Project Area to the REDEVELOPER and shall be completed to the satisfaction of the AUTHORRITY within twenty-four (24) calendar months from the date of conveyance. The REDEVELOPER shall not be deemed in default on account of any failure in performance due to unforeseeable causes beyond control of and without the fault or negligence of said REDEVELOPER, including but not restricted to acts of God, or of the public enemy, fires, floods, epidemics, quarantine restrictions, strikes, riots, civil commotion, freight embargoes, shortages of material, or acts of the Federal Government or any of its agencies, or delays of sub-contractors due to any such causes."

11. As of February 17, 1969, up to and including the time of trial, defendants had not begun working on the proposed garden except for the preparation of plans.

12. From the dates on which restoration was to have been completed on the properties located at 130-32 Delancey Street up to the date of the initiation of legal remedies by the redevelopment authority, the authority sought unsuccessfully to institute negotiations with defendants in order to effectuate restoration of the premises.

13. Through its actions during the period from January 8, 1966, the date originally set for the completion of work on 130 Delancey Street, up to July 30, 1970, the date on which the redevelopment authority formally instituted legal proceedings, the redevelop-

ment authority indicated to defendants that the dates in the aforementioned agreements were not absolute and that the time for the completion of work could be extended.

14. During the period referred to in paragraph 13 above, plaintiff, in an attempt to avoid litigation, encouraged defendants to proceed on the restoration of the premises in question.

15. During the period referred to in paragraph 13 above, the redevelopment authority sought to have defendants name alternative completion dates for the contracts, which defendants refused to do up to the time of hearing.

16. During the period referred to in paragraph 13 above, defendants made improvements to the premises located at 130 Delancey Street.

17. At the time of the hearing on this matter, defendants indicated that work on the rehabilitation of the premises located at 130-32 Delancey Street could be completed within a year and a half of the hearing date.

18. The delay in the final completion of the restoration of the premises located at 130 Delancey Street is due to defendants' insistence on complete historical accuracy of all improvements made and the use of materials only which were actually manufactured in the eighteenth century.

19. The delay in the restoration of the garden to be located at 132 Delancey Street results from the fact that restoration of the adjoining premises, 130 Delancey Street, must be completed prior to the landscaping of the garden.

## DISCUSSION

Defendants, in order to prevail, have relied on two theories which may be summarized as follows. First,

defendants contend that the dates originally set for performance were unrealistic. They feel that historical accuracy would demand a much greater period of time for the restoration of the premises located at 130 Delancey Street or, alternatively, defendants feel that the difficulty they encountered in obtaining historically precise materials is a "shortage of materials," which would excuse performance under their agreements with the redevelopment authority.

Second, defendants contend that the original dates set for completion have been waived by the redevelopment authority, subsequent to January 8, 1966, in allowing and, in fact, encouraging performance under the contract.

If defendants had only their first theory to rely on, they must fail. Nowhere in either agreement does it state that the rehabilitation of the properties must be to the degree of authenticity and realism that defendants would like.

The transcript of the hearing reveals defendant, Milton A. Calesnick's, admission that absolute precision of the work is his personal desire:

"THE COURT: Does the Agreement say you have to use authentic, original pieces for everything?

"MR. CALESNICK: No.

"THE COURT: Otherwise, you could be restricted to using nails made back in 1750. You would have a heck of a time completing it if every item is going to be authentic. There is nothing in the Agreement that I can see which says you have to use authentic pieces.

"MR. CALESNICK: There is nothing in the Agreement which says I have to use authentic pieces nor do I have to take the bricks out of the front of the house, clean them, turn them over, put them back in again, nor do I have to go around looking for blue stone steps. The front steps aren't ordinary steps. This is blue

vein marble from upstate Pennsylvania. That vein ran out in 1820. From that date on, most of the marble was black vein, not blue vein. That may not mean much to anyone in this court, but to me that's important."

This court must laud defendants' motives, but we could not allow a personal whim, by one party to a contract, to destroy the other party's rights under the agreement.

With regard to defendants' second theory, when reviewing the record we see an anomaly in plaintiff's behavior. On one hand, the redevelopment authority contended that the original completion date was never waived, but, at the same time, the redevelopment authority admits it encouraged performance under the agreement even though the period for performance purportedly had expired.

Mae Belle Segal, project administrator for the redevelopment authority, stated at the hearings the following:

"THE WITNESS: Well, the dates for completion —separate dates for completion for two parcels are contained in the contract, and we never amended the contract. We never changed the date. We have sent letters to Dr. Calesnick and spoken with him, urging him to get the work started, which is our program. The moment the contracts expire as to their time obligations, we don't just jump in and enter into litigation. We try to get the work done and try to encourage the people to do it."

Such actions by the redevelopment authority constitute a waiver of the original completion date under the contracts. A parallel to the situation at hand can be seen in real estate conveyance cases. In those situations, time is usually made to be the essence in the contract, yet subsequent to the signing of the agreement of sale, one party through its actions can

waive the date set for settlement. As was stated in Warner Company v. MacMullen, 381 Pa. 22 (1955), at pages 28-9:

"However, even if consideration be given to defendants' contention that settlement was not made within the 90 days, there is here applicable the principle that even though the time fixed in an agreement for settlement is stated to be of the essence of the agreement, it may be extended by oral agreement or be waived by the conduct of the parties, and where the parties treat the agreement as in force after the expiration of the time specified for settlement it becomes indefinite as to time and neither can terminate it without reasonable notice to the other: Hopp v. Bergdoll, 285 Pa. 112, 131 A. 698; Cohn v. Weiss, 356 Pa. 78, 81-84, 51 A. 2d 740, 742, 743; DiGiuseppe v. DiGiuseppe, 373 Pa. 556, 559, 96 A.2d 874, 875."

In Wolson & Wolson v. Freihofer, 84 Pa. Superior Ct. 561 (1925), the court stated, at page 567:

"The rule is well founded that courts will relieve against forfeiture when the injured party has been misled or an undue advantage has been taken of his reliance on a waiver of strict performance. The contract may be waived as effectually by implication as by express agreement, and whether there has been an implied waiver in any case depends upon whether the conduct of the party seeking to invoke the strict provision of the contract had been such as to lead the other party to believe he would not be held to it, but might, notwithstanding it, proceed to perform: Welsh v. Dick, 236 Pa. 155."

As indicated by a reading of the cases cited above, where performance has been waived by one of the parties to an agreement, it remains for that party to set up, in the alternative, a reasonable completion date. This, plaintiff has sought to do. While encour-

aging defendants to continue working, plaintiff did let defendants know that there was a limit to its patience and, therefore, sought from defendants an estimated completion date. Defendants at all times prior to the hearings on this matter refused to even consider naming such a date for the reasons cited above, namely, Milton A. Calesnick's insistence on the absolute authenticity of the rehabilitation of the premises involved.

However, by the time of trial, defendant, Milton A. Calesnick, was willing to state that within a year and a half from the hearing date, restoration pursuant to the agreements could be achieved.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the res of this matter.

2. This court has jurisdiction over the parties to this matter.

3. The Redevelopment Authority of the City of Philadelphia waived the date originally set for completion of the restoration of the premises located at 130 Delancey Street, Philadelphia.

4. The Redevelopment Authority of the City of Philadelphia waived the date originally set for completion of the garden to be located at 132 Delancey Street, Philadelphia.

5. One year is a reasonable period of time in which to complete performance of the terms of the contracts referred to in the findings of fact.

## DECREE NISI

And now, to wit, February 28, 1973, it is ordered, adjudged and decreed that:

1. Defendants, Milton A. Calesnick and Eleanor J. Calesnick, perform all terms, conditions and requirements of the assignment agreement dated January

13, 1965, and entered into by said Milton A. Calesnick and Eleanor J. Calesnick, by the Redevelopment Authority of the City of Philadelphia and by S. Lester Asher and Jeanette K. Asher, within one year of the filing of this decree;

2. Defendants, Milton A. Calesnick and Eleanor J. Calesnick, perform all terms, conditions and requirements of the agreement dated November 15, 1966, and entered into by Milton A. Calesnick and Eleanor J. Calesnick, and by the Redevelopment Authority of the City of Philadelphia, within one year of the filing of this decree.

It is further ordered, adjudged and decreed that defendants post a performance bond in the amount of $3,000 to insure performance of the terms, conditions and requirements of said agreements. If defendants fail to post such bond within 20 days of the date of this decree, the contract between the redevelopment authority and defendants shall be considered breached and the premises located at 130-32 Delancey Street shall be reconveyed and retitled to plaintiff.

This decree nisi shall be final as of course unless exceptions are filed within 20 days after notice hereof. The prothonotary is directed to notify forthwith the parties hereto and their counsel of the entry of this decree.